SIMONSON, TRUSTEE IN BANKRUPTCY, ET AL. *v.*
GRANQUIST, DISTRICT DIRECTOR OF
INTERNAL REVENUE, ET AL.

No. 83. Argued January 18, 1962.—Decided March 5, 1962.

*Donald A. Schmechel* and *Fred A. Granata* argued the cause for petitioners. With them on the briefs were *Arthur E. Simon* and *John F. Cramer, Jr.*

*Richard J. Medalie* argued the cause for respondents. With him on the briefs were *Solicitor General Cox, Assistant Attorney General Oberdorfer* and *I. Henry Kutz.*

MR. JUSTICE BLACK delivered the opinion of the Court.

These two cases, consolidated for argument here, involve controversies between the United States and bankruptcy trustees concerning the right of the Government to recover federal tax penalties against the estate of a bankrupt.[1] Because the tax penalties constituted perfected liens on the estate of the bankrupt,[2] the Court of Appeals for the Ninth Circuit, following one of its own prior decisions which subsequently had been supported

---

[1] In the first case, *Simonson v. Granquist,* there is another point which we need not reach because of the disposition made here.

[2] In *Simonson v. Granquist* the liens arose under Int. Rev. Code of 1954, § 6321; in *Harris v. United States,* they arose under Int. Rev. Code of 1939, § 3670.

by both the Sixth and the Tenth Circuits,[3] sustained District Court judgments holding the penalty claims allowable. 287 F. 2d 489, 491. Since the Fourth and Fifth Circuits have held to the contrary,[4] we granted certiorari to resolve the conflict. 366 U. S. 943.

Two provisions of the Bankruptcy Act, §§ 57j and 67b, are asserted to have particular relevance to the question. Section 57j provides:

"Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose . . . ." [5]

Section 67b provides, however:

"[S]tatutory liens . . . for taxes and debts owing to the United States . . . may be valid against the trustee, even though arising or perfected . . . within four months prior to the filing of the petition initiating a proceeding under this Act by or against him. . . ." [6]

Despite the fact that the language of § 57j broadly prohibits the allowance of penalty claims in bankruptcy without regard to whether such claims are secured or unsecured, the Government argues that this section should be interpreted to apply to unsecured penalty claims only and that secured claims, even though for penalties, should be allowed under § 67b. Its argu-

---

[3] *In re Knox-Powell-Stockton Co.* (C. A. 9th Cir.), 100 F. 2d 979; *Kentucky* v. *Farmers Bank* (C. A. 6th Cir.), 139 F. 2d 266; *United States* v. *Mighell* (C. A. 10th Cir.), 273 F. 2d 682.

[4] *United States* v. *Harrington* (C. A. 4th Cir.), 269 F. 2d 719; *United States* v. *Phillips* (C. A. 5th Cir.), 267 F. 2d 374.

[5] 30 Stat. 561, as amended, 11 U. S. C. § 93 (j).

[6] 52 Stat. 876, as amended, 11 U. S. C. § 107 (b).

ment starts from the fact that the Bankruptcy Act primarily provides a way to gather the unencumbered assets of an insolvent debtor for distribution among his unsecured creditors, but, though containing some provisions applicable to secured creditors, generally leaves those creditors secured by mortgages and liens free to enforce their claims directly against the property by which those claims are secured. From this and a section-by-section analysis of the Act, the Government reasons that the "claims" referred to in § 57, which governs the "Proof and allowance of claims," are not the claims of secured creditors but only the "claims" of unsecured creditors against the fund created by unencumbered assets, with which the Act primarily deals. On this basis the Government contends that § 57j, being a part of § 57, must be read as barring only those penalties that have not yet ripened into a lien so as to become a charge upon the bankrupt's property.

We think, however, that the language of § 57j is itself a more dependable guide to its meaning than this argument from the general structure of the Bankruptcy Act. Unquestionably that language is broad enough to bar all penalties, whether secured by lien or not, and we think the section was designed to do precisely that. For it plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a "pecuniary" loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who

have been guilty of some default or wrong.[7]  Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors.

When we turn to the language of § 67b, we find nothing that indicates a purpose to require the general creditors of a bankrupt to suffer because of penalties designed to be inflicted upon the bankrupt himself.  Indeed, there is not a single word in that section regarding penalties, and the plain purpose of the section is merely to prevent certain liens, including statutory tax liens, "arising or perfected . . . within four months prior to the filing of the [bankruptcy] petition," from being set aside and declared invalid under § 60 as preferential.[8]  Thus § 67b expressly declares that it is to take precedence over any "provisions of section 60 of this Act to the contrary . . . ."  Section 67b cannot therefore be read as showing a congressional purpose to make penalties allowable contrary to the special and specific language of § 57j which makes them not allowable.[9]

The Government argues, however, that the legislative history of the two sections supports the allowance of penalties when they have ripened into liens.  Without discussing the varied arguments to this effect in detail, we think the legislative history cited supports no such conclusion.[10]  Nor do we think that any inference can be

---

[7] See, *e. g., United States* v. *Childs,* 266 U. S. 304, 307.

[8] 30 Stat. 562, as amended, 11 U. S. C. § 96.  See Analysis of H. R. 12889, 74th Cong., 2d Sess. 211, note 1; 4 Collier, Bankruptcy 183, particularly note 12.

[9] Cf. *Gardner* v. *New Jersey,* 329 U. S. 565, 580–581.

[10] Indeed what little legislative history there is might well be taken to indicate an intent to bar penalties whether liened or not.  Thus, the minority report on the Torrey Bill which eventually became the Bankruptcy Act of 1898 stated as an objection to § 57j the fact that although "penalties and forfeitures, when merged into judg-

drawn from the failure of Congress to amend the Act for although some courts have held liened penalty claims allowable, others have held precisely the opposite.[11]

It is true that the United States has long had an absolute priority for debts due from insolvent debtors and that the Bankruptcy Act generally accords secured creditors a preferred position. But § 57j places penalties in a category quite different from ordinary debts, one not favored in bankruptcy, and the character of a penalty is by no means changed by calling it a lien.

*Reversed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN joins, dissenting.

Of course one agrees with the Court that an important purpose of the Bankruptcy Act was to ensure an equitable distribution of assets among creditors. I also agree that § 57j, 11 U. S. C. § 93 (j), denying claims for penalties against the estate, reflects a policy against disadvantaging innocent creditors for the wrongs of the bankrupt. If that were the only policy of the Act, § 57j would hold the exclusive field and there would be no problem. As it is, if there be a countervailing policy as a matter of historic bankruptcy law, it can neither be discarded nor disregarded in giving § 57j its proper setting and its resulting scope.

---

ment, . . . are liens upon the debtor's estate, this bill treats them as worthless and forbids their payment." H. R. Rep. No. 1674, 52d Cong., 1st Sess., pt. 2, pp. 13–14.

[11] Compare, *e. g., In re Knox-Powell-Stockton Co.,* 100 F. 2d 979, and *Kentucky* v. *Farmers Bank,* 139 F. 2d 266, with *United States* v. *Phillips,* 267 F. 2d 374, and *In re Burch,* 89 F. Supp. 249. In 1960 Congress passed an Act containing a provision applying § 57j to penalties "whether or not secured by lien," but this was vetoed by the President. 106 Cong. Rec. 19168.

In bankruptcy a sharp distinction has always been drawn between secured and unsecured creditors. Secured creditors may not vote at creditors' meetings, § 56b, nor may their claims be allowed against the bankrupt estate, § 57e, except to the extent that these claims exceed the value of the security. Fully secured creditors are not counted in determining the total number of creditors in order to ascertain the number required to initiate involuntary bankruptcy, § 59e. Liens have been held unaffected by a discharge under § 17, *e. g., Prebyl* v. *Prudential Ins. Co.,* 98 F. 2d 199; see 1 Collier, Bankruptcy ¶ 17.29 (14th ed. 1961).

Sections 64, 65, and 67 establish three classes of debts: those which are secured by lien, those which are given priority and all others. Those having neither security nor priority are satisfied on a pro rata basis, § 65. Those with priority, as listed in § 64, are to be paid in full in specified order before the distribution of pro rata dividends to other claimants. Liens, in § 67d of the statute as enacted in 1898, 30 Stat. 544, 564, were declared to be unaffected by the statute—they were entirely without its scope. Consequently they were entitled to precedence over claims granted priority by § 64. *City of Richmond* v. *Bird,* 249 U. S. 174. This section was omitted in the 1938 revision because its wording permitted inferences that by negative implication it disallowed certain liens not otherwise invalidated by the Act, and because the substance of the provision was thought to be preserved in other sections—not because of disapproval in policy. S. Rep. No. 1916, 75th Cong., 3d Sess. 17 (1938); see 4 Collier, *supra,* ¶ 67.20. This Court has held that liens remain immune from and are not displaced by the Act's priorities under the 1938 Act, *Goggin* v. *California Labor Div.,* 336 U. S. 118, 126–127, and liens for federal taxes are expressly preserved by § 67b. A limited exception

44

to the immunity of liens was made in § 67c, but the extent of the invalidation or subordination of liens to other debts was carefully circumscribed, and the basic lien immunity remains.  4 Collier, *supra,* ¶ 67.20[3]–67.20[7].

Congress has thus treated liens as outside the policy of equal treatment of creditors in bankruptcy.  3 Collier, *supra,* ¶ 57.07.  A lienor does not hold simply a first priority; he has "a right to enforcement independent of bankruptcy," *id.,* ¶ 64.02, at 2061.  The Bankruptcy Act deals with the distribution of unencumbered assets among unsecured creditors.  *Id.,* ¶ 60.01.  Lienholders need no Bankruptcy Act.  Liens are independent of and essentially unaffected by bankruptcy proceedings.  I agree with the court below that liens are unaffected by § 57j; they are outside its scope.