In the Matter of Tito DI VINCENZO, Bankrupt.

Tito DI VINCENZO, Plaintiff,

v.

NEW YORK CITY INCOME TAX BUREAU, Defendant.

Bankruptcy No. 76 B 1228.

United States Bankruptcy Court, S. D. New York.

Feb. 1, 1979.

Louis P. Rosenberg, Brooklyn, N. Y., for bankrupt.

Allen G. Schwartz, Corp. Counsel, New York City, for defendant.

## DECISION ON THE DISCHARGEABILITY OF TAX LIABILITIES

EDWARD J. RYAN, Bankruptcy Judge.

The bankrupt has instituted an adversary proceeding against the New York City Income Tax Bureau, seeking a judgment declaring the dischargeability of tax (and tax related) liabilities owing the City for the years 1971–73. Plaintiff contends that these claims are dischargeable pursuant to section 17(a)(1) of the Bankruptcy Act, which provides that:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy.

The bankrupt filed his voluntary petition in bankruptcy on May 21, 1976. On May 20, 1977, he obtained his discharge in bankruptcy. Through various stipulations and concessions of the parties, the issues in this

case have been narrowed and limited to the dischargeability of the 1972 tax liabilities, which total $11,820.47. This liability is comprised of three elements: $2,066.50 for tax penalties, $1,487.89 for pre-petition interest, and $8,266.48 for taxes owed. Although required to file his income tax return by April 15, 1973,[1] the bankrupt filed his return late, on November 20, 1974.

### The Income Tax Debt

■ The bankrupt, arguing that the tax debt for 1972 is dischargeable, relies on the express words of section 17(a)(1) of the Bankruptcy Act and cases interpreting that section. The petition in bankruptcy, filed on May 21, 1976, provides the terminal point for the three-year period. Hence, all taxes which became "legally due and owing" prior to May 21, 1973, are dischargeable. Under the bankrupt's reasoning, this tax debt became "legally due and owing" on April 15, 1973, the date the return was required to be filed, rendering this a dischargeable claim.

The City of New York, on the other hand, argues that the taxes did not become "legally due and owing" until the date the return was actually filed, since prior to that time, the rights of the City against the taxpayer are limited. The City urges this court to hold that compliance with the tax laws is essential and that the bankrupt should not be rewarded, in the form of a discharge, for noncompliance. By failing to file his tax return until November 20, 1974, the City contends, the bankrupt has lost his right to a discharge of the tax.

Although not unsympathetic to the arguments presented by the City of New York, this Court finds the language of section 17(a)(1) clear and unambiguous in support

of the bankrupt. The date taxes become "legally due and owing" is April 15, the date the return is required to be filed.[2] The argument of the City of New York that the assessment date (the date the return was filed) is the time when the tax becomes "legally due and owing" is contrary to the meaning of section 17(a)(1).[3]

In enacting the 1966 amendments to section 17(a)(1), Congress made substantial changes. Under prior law, debts for taxes were not entitled to a discharge in bankruptcy. The harshness of this provision on the financial rehabilitation of the bankrupt was evident to the legislators responsible for the change.

> Frequently, [the nondischargeability of taxes under § 17(a)(1)] prevents an honest but unfortunate debtor from making a fresh start unburdened by what may be an overwhelming liability for accumulated taxes. . . . [C]onsistency with the rehabilitory purpose of the Bankruptcy Act, as well as fairness to individuals demands some time limit upon the extent of taxes excepted from discharge.[4]

The enactment of the 1966 amendments to section 17(a)(1), allowing the discharge of those tax debts of the bankrupt which became "legally due and owing" more than three years preceding bankruptcy, indicates a congressional effort to balance conflicting interests. While seeking to further the rehabilitation of the bankrupt through a discharge of older tax obligations, Congress did not lose sight of the legitimate concerns of the taxing authorities. A three-year statutory period, during which taxes will not be discharged in bankruptcy, was provided, based on congressional belief that it "will not impose an unrealistic or unfair

1. Administrative Code of the City of New York § T46.31.0(a)(1).

2. *In re Kopf*, 299 F.Supp. 182, 186–87 (E.D.N.Y. 1969); *In re Fox*, 3 Bankr.Ct.Dec. 1192, 1194 (N.D.N.Y.1977); *see*, 1A Collier on Bankruptcy § 17.14, pp. 1615–16.

3. *See, In re Greve*, 11 Collier Bankr. Cases (W.D.Okl.1976) 473, 478–79, where it is stated

that "the assessment date of an unpaid tax liability has no relationship to the date the tax liability did, in fact, become legally due and owing."

4. S.Rep. No. 1158, 89th Cong., 2nd Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Admin. News, p. 2468 (quoting H.R.No. 687, 89th Cong., 1st Sess. (1966)).

burden upon the tax authorities in auditing returns and assessing deficiencies." [5]

While section 17(a)(1) offers the bankrupt a discharge from taxes which became "legally due and owing" more than three years preceding bankruptcy, it also indicates congressional concern for the potential consequences of a dishonest taxpayer. Exceptions to the dischargeability provisions of section 17(a)(1) exist, e. g., if: (1) the bankrupt fails to file a return as required by law, or (2) the bankrupt files a fraudulent return.

The legislative history indicates that the intent behind the enactment of the 1966 Amendment was "to provide relief for the financially unfortunate and not to create a tax evasion device." [6] The statute furthers this end.

The tax in question became "legally due and owing" more than three years preceding the filing of the petition in bankruptcy, and hence is a dischargeable debt. Under the provisions of section 17(a)(1), the bankrupt's mere delay in filing is of no significance, and does not entitle the tax authorities to any relief.

### Interest on the Tax Debt

■ The dischargeability of an obligation owing to the tax authorities for pre-petition interest accruing on the tax debt is a function of the dischargeability of the obligation itself. Any other result would clearly be anomalous and contrary to the intent of Congress in providing for the dischargeability of older tax obligations of the bankrupt.

*Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), decided prior to the enactment of the 1966 amend-

ments, dealt with the dischargeability of post-petition interest, and held that the bankrupt was not entitled to a discharge of this obligation.[7] In reaching this result, the Court noted the interrelationship which exists between the liability for interest and the underlying tax obligation, when it reasoned that "interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and thus, an integral part of a continuing debt." [8] The Court extended this reasoning, holding that the intent of Congress in providing, pursuant to the then existing section 17, that tax debts should not be discharged in bankruptcy, was that the bankrupt's personal liability would continue on the interest accruing on the debt as well.[9]

The converse of this reasoning in the *Bruning* case, applied to the 1966 amendment to § 17, is also true. In revising that provision, Congress intended to relieve the bankrupt from the financial hardships which result from having debts survive bankruptcy, and to give the bankrupt a fresh start. To continue the interest obligation as a liability against the bankrupt when the tax debt itself is discharged, would obviously defeat the policy of section 17(a)(1), which is to aid in the financial rehabilitation of the bankrupt. The pre-petition interest of the bankrupt in the case at bar, and the tax obligation itself, having become "legally due and owing" more than three years preceding bankruptcy, are both discharged pursuant to section 17(a)(1).[10]

### The Tax Penalties

■ The dischargeability of the penalties imposed against the bankrupt, resulting

---

**5.** *Id.*

**6.** *Id.*

**7.** It should be noted that under § 17 of the Bankruptcy Act, as it existed at the time of *Bruning*, the underlying tax debt was not dischargeable in bankruptcy. This factor appears critical to the result reached by the Court, in holding that "post-petition interest on an unpaid tax debt not discharged by § 17 remains, after bankruptcy, a personal liability of the debtor." 376 U.S. at 363, 84 S.Ct. at 909.

**8.** *Id.* at 360, 84 S.Ct. at 908.

**9.** *Id.*

**10.** *See, In re Wallace*, 7 Collier Bankr. Cases 721, 723 (N.D.Tex., 1976), where the court held that the interest accruing on the tax, together with the underlying tax obligation, was dischargeable under § 17(a)(1).

from his failure to file his tax return on time,[11] depends on considerations differing from those involved in the prior discussion. The imposition of a penalty results in an obligation distinct from the tax claim out of which it grew. Section 57. j. of the Bankruptcy Act provides that:

> Debts owing to the United States or to any State or any subdivision thereof as a penalty . . . shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty . . arose.

Apparent inconsistencies between the language used in section 57. j., which provides that penalty related obligations are not allowable, and that of sections 17(a) and 63(a), have resulted in assertions that, although penalties are not allowable under section 57. j., section 63(a) fails to provide that they are not provable. Hence, the argument goes, penalties are dischargeable in bankruptcy under section 17(a), since the provisions of section 63(a) render these debts provable and allowable, notwithstanding section 57. j., which provides that such claims are not allowable.

This reasoning fails to withstand analysis. Section 57. j. "plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss."[12] In *Simonson v. Granquist*, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962), the Court held that section 57. j. bars the right of the Government to recover federal tax penalties against the estate of a bankrupt. Tax penalties, the Court noted, are of a punitive nature, imposed against

persons who have been guilty of wrongdoing. "Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors."[13]

The apparent inconsistency between sections 57. j. and 63(a), and their relation to section 17 of the Bankruptcy Act, was dealt with by the Court of Appeals in *In re Abramson*, 210 F. 878 (2nd Cir. 1914). The Court held that a penalty imposed against the bankrupts for a violation of the Agricultural Law was neither provable nor allowable, except to the extent of any pecuniary loss suffered by the Government. The *Abramson* court conceded that the provisions of sections 57. j. and 63. a. are inconsistent, but added that it "would not come to a conclusion so against public policy as that Congress intended bankrupts to be released from all liability for violating laws . . . . The lawmaker who has suffered no pecuniary loss is not permitted to share in the assets of the estate with creditors who have. On the other hand, bankrupts who have violated laws passed for the public good cannot escape punishment by going into bankruptcy."[14]

It would be totally illogical to permit an individual who has violated the law to escape liability through a discharge in bankruptcy. Congress did not intend such a result. Courts have consistently reconciled the inconsistencies which exist between section 57. j. and section 63. a. so as to hold penalties neither provable nor allowable, and hence not dischargeable in bankruptcy.[15] This court finds this approach proper. The tax penalties imposed on the bankrupt

11. Administrative Code of the City of New York § T46–65.0(a) (1971).

12. *Simonson v. Granquist*, 369 U.S. 38, 40, 82 S.Ct. 537, 538–539, 7 L.Ed.2d 557 (1962).

13. *Id.* at 41, 82 S.Ct. at 539.

14. 210 F. at 879–80. *See, Sherwood v. United States*, 228 F.Supp. 247 (E.D.N.Y.1964), where it is stated that it would be against public policy to hinder governmental enforcement of sanctions, by allowing those penalized to discharge this liability in bankruptcy. "To prevent the debtor from thus discharging his penalties and transferring his punitive liability to

his innocent creditors, he has been denied a discharge of such penalties in his bankruptcy proceeding." *Id.* at 249–50. *See also, United States v. Moore*, 366 F.2d 243 (5th Cir. 1966).

15. In *United States v. Roberts Motor Express, Inc.*, 375 F.Supp. 1165, 1169 (N.D.N.Y.1973), the Court expressly equated the term "allowable" as used in section 57. j. with the term "provable," and held that since only provable debts can be discharged pursuant to the provisions of section 17. a. of the Bankruptcy Act, tax penalties are not dischargeable, but remain personal liabilities of the debtor.

in the case at bar, being neither provable nor allowable, are not entitled to a discharge under the provisions of section 17. a.

In summary, this court holds that the bankrupt-plaintiff in the present case is entitled to a discharge of his 1972 tax liability (and the pre-petition interest accrued thereon), since the tax obligation became "legally due and owing" more than three years prior to the filing of the petition in bankruptcy. The obligation flowing from the tax penalty, however, being neither provable nor allowable, is not entitled to a discharge, but remains a personal liability of the bankrupt, pursuant to the interaction of sections 57. j. and 17. a.