In re James Kenward METZ, Yvonne Radford Metz, Debtors.

James Kenward METZ, Yvonne Radford Metz, Plaintiffs,

v.

FIRST REALTY MORTGAGE CORPORATION c/o William W. Terry, III, Esq., Defendant.

Bankruptcy Nos. 75–491(12), 75–492(11).

United States Bankruptcy Court, W. D. Virginia.

Aug. 22, 1979.

David R. Nichols, Roanoke, Va., for debtors.

William W. Terry, III, Richmond, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue to be resolved is whether or not late charges and prepayment penalties are allowable in these proceedings.

On April 11, 1975, Plaintiffs filed petition in this Court seeking an Arrangement with their creditors pursuant to Chapter XI of the *Bankruptcy Act.* James K. Metz, a practicing dentist in the City of Roanoke, had ventured into real estate investments with sundry parties involving several apartment complexes within the Roanoke Valley. When the recession struck in the early 70's, and the interest rates upon loans outstanding accelerated, while income from investments diminished, the Plaintiffs found themselves in extreme financial difficulty brought about by the multitude of circumstances including the foregoing.

Among the investment liabilities of the Plaintiffs was the Defendant's deed of trust note in the original principal sum of THIRTY-SIX THOUSAND, FOUR HUNDRED DOLLARS ($36,400.00), payable monthly at FIVE HUNDRED SEVENTY-SIX DOLLARS AND 24/100 ($576.24).

During the progress of this proceeding, the indebtedness to the Defendant was paid off on or about August 24, 1976. The instrument provided a prepayment penalty of THREE PERCENT (3%), and late charges assessable for payments not promptly made, and at the date of payoff, the amount certified to the Plaintiffs included a prepayment penalty totaling NINE HUNDRED SIXTY-FIVE DOLLARS AND 61/100 (965.61), and seven late charges totaling TWO HUNDRED ONE DOLLARS AND 67/100 (201.-67). These amounts were paid along with the principal, and accrued interest on the date of payoff. The Plaintiffs, by their Complaint filed herein on July 20, 1979, seeks recovery of the two items for the reason that they were unauthorized collection of penalties, which are not collectible in these proceedings.

The Defendant, by Counsel, responded to the Complaint, alleging as grounds for denial of the Complaint that the long delay by the Plaintiffs should invoke an estoppel; that further the delay should be treated as laches on the part of the Plaintiffs, and their guilt of laches should preclude recovery; that the failure to assert the rights of the Plaintiffs for the period of time was tantamount to waiver of the Plaintiffs' right, and that any recovery, if granted, should be added to and made a part of the payout to general creditors.

Upon hearing of the Complaint, Dr. Metz testified that the progress of this Chapter XI proceeding, which had continued since 1975, was a progressive process involving numerous matters requiring litigation and determinations by the Court, as well as extensive time and effort on the part of the Debtors and their Counsel, the result of which being that several loose ends, including questionable claims remained until the final conclusion and resolution of the Arrangement proceeding. The witness further testified that any recovery of the penalties was considered as a part of the payout which he had proposed to his general creditors and was accepted by them.

The law as to penalties is set out in numerous Court decisions. Section 57 of the *Bankruptcy Act* precludes the payment of penalty on tax liabilities. The judicial construction of the *Bankruptcy Act* over the years applies the same rule to penalties asserted by private creditors.

In *Simonson, Trustee, et al. v. Granquist District Director Internal Revenue Service, et al.* (1962) 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557, the late Justice Black speaking for the Court stated:

" . . . the government contends that Section 57j, being a part of 57, must be read as barring only those penalties that have not yet ripened into a lien so as to become a charge upon the bankrupt's property.

We think, however, that the language of 57j is itself a more dependable guide to its meaning than this argument from the general structure of the Bankruptcy Act. Unquestionably that language is broad enough to bar *all penalties*, whether secured by lien or not, and we think the section was designed to do precisely that. For it plainly manifests a congressional purpose to bar all claims of *any kind* against a bankrupt except those based on 'pecuniary' loss." (emphasis added)

The language used by the Court in the *Simonson* case although speaking of the tax penalty nevertheless speaks in broad language that all penalties whether secured by lien or not were disallowed by Section 57j. and the section admitted of no exceptions with reference to taxes.

The Court, in the *City of New York v. Saper, Trustee, etc.* (1949) 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, citing the case of *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244, quoted Justice Holmes as stating that the rule of stopping interest at bankruptcy was part of English bankruptcy and a fundamental principle which we copied and not a matter of legislative command.

In re *Inland Gas Corporation* (1957 6th Cir.) 241 F.2d 374, at 379, in a Chapter XI proceeding, the Court stated as follows:

"The general rule in bankruptcy and in equity receiverships has been that interest on the Debtor's obligations ceases to accrue at the beginning of proceedings. This is based upon reasoning that interest *is a penalty* for delay in payment, and where the power of the debtor to pay his contractual obligations is suspended by law, interest during suspension may not be accrued, if the courts are properly to preserve and protect the estate for the benefit of all interest involved. (emphasis added)

Proceedings in Chapter XI, as well as the other rehabilitative chapters of the Bankruptcy Act, have as their primary thrust the rehabilitation of a financially distressed Debtor. The Courts uniformly have viewed the charge by creditors and the payment by debtors of penalties to be contrary to the intent of Congress when the statute was enacted. Not only does it deter from the object of rehabilitation, but has a tendency to diminish the claims and recovery of other creditors who do not have access to penalty assessments.

■ Late charges have been held to be penalties. See Re: *Meade Land and Development Company*, 2 CCH BK Law Reporter 64,003. There is no reason why a prepayment penalty should be treated any differently. See, In re: *Hawks* (4 Cir. 1973) 471 F.2d 305; Re: *Tastyeast, Inc.* (3 Cir. 1941) 126 F.2d 879 cert. den'd 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766; 3 *Collier on Bankruptcy* Section 57.22, *et seq.*

■ The Defendant's principle defense to the Complaint appears to be predicated on delay of the Debtors in raising the issue. It may be that the appropriate procedure would have been a timely objection to the assertion of penalties at date of the payoff; nevertheless, a Debtor winding its way through a Chapter XI proceeding should not be penalized, nor should other creditors be so penalized for a delay which was not prejudicial in any manner to the Defendant.

Accordingly, it is the conclusion of the Court that the prayer of the Complaint should be granted, and it is accordingly so

ORDERED

that the Defendant refund forthwith to the Plaintiffs the sum set forth in the Complaint of NINE HUNDRED SIXTY–FIVE DOLLARS AND 61/100 ($965.61), prepayment penalty, plus TWO HUNDRED ONE DOLLARS AND 67/100 ($201.67) late charges, and judgment is hereby granted in the sum of ONE THOUSAND, ONE HUNDRED SIXTY–SEVEN DOLLARS AND 28/100 ($1,167.28), with interest from this date, with each party to bear their respective costs.