**UNITED STATES DEPARTMENT OF THE INTERIOR, Appellant,**

v.

**James W. ELLIOTT, Jr., Trustee, Appellee.**

**Civ. A. No. 84–0037–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

May 31, 1984.

Robert Moore, DOI, Knoxville, Tenn., John P. Alderman, U.S. Atty., Roanoke, Va., for appellant.

James W. Elliott, Jr., Bristol, Va., for appellee.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The appellant, United States Department of the Interior, has appealed an Order of the United States Bankruptcy Court for the Western District of Virginia 'denying a motion to alter or amend its decision holding that the appellant was not entitled to an administrative expense. The issue presented to this court is whether post-petition civil penalties assessed against the debtor in possession for violations of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201–1328 (Supp. II 1978) (hereinafter "the Surface Mining Act") are allowable as an administrative expense under Section 64(a)(1) of the Bankruptcy Act, former 11 U.S.C. § 104(a)(1) (1967). Jurisdiction over this matter is based upon Section 39(c) of the Bankruptcy Act, former 11 U.S.C. § 67(c) (1966). For the reasons stated below, the decision of the bankruptcy court is affirmed.

## I. FACTS

On August 3, 1979 Elkins Energy Corporation (hereinafter "Elkins") filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. Subsequently, the bankruptcy court permitted Elkins to continue its mining operations as a debtor in possession pursuant to Section 343 of the Bankruptcy Act, former 11 U.S.C. § 743 (1938).

In the course of Elkins' mining operations, the Office of Surface Mining Reclamation and Enforcement in the United States Department of the Interior (hereinafter "OSM") cited the debtor in possession for several violations of the Surface Mining Act and implementing regulations, 30 C.F.R. §§ 700.1–950.20 (1982). On September 11, 1979 the OSM issued notice of violation 79–1–47–46 to Elkins under 30 U.S.C. § 1271(a)(3) for three violations. (Record at 30–33). Elkins corrected all three violations by October 3, 1979, and the OSM terminated the notice of violation. (Record at 34–35). However, on October 15, 1979 the OSM notified the debtor, pursuant to 30 U.S.C. § 1268(a), (c), that a civil penalty of $1,100 had been proposed for the notice of violation. (Record at 36–41). Then on February 28, 1980, the OSM issued notices of violation 80–1–18–4 and 80–1–18–5 to the debtor for several additional violations. Since four of the violations were not timely corrected, cessation order 80–1–18–4 was issued for Elkins' failure to abate violations (1) and (2) of notice of violation 80–1–18–4, and cessation order 80–1–18–5 issued for Elkins' failure to abate violations (3) and (4) of notice of violation 80–1–18–5. On May 3, 1980, the OSM terminated violation (1) of cessation order 80–1–18–4 (Record at 48), but the other three violations remain.

On February 13, 1981, the bankruptcy court confirmed the Elkins' plan of arrangement. Eleven months later, the OSM sent the debtor notices of proposed assessment for the cessation orders, pursuant to 30 U.S.C. § 1268(c), (h). (Record at 49–54). The OSM assessed the civil penalties at $1,100 for notice of violation 79–1–47–46, $23,250 for cessation order 80–1–18–4, and

$45,000 for cessation order 80–1–18–5 on June 17, 1982, pursuant to 30 U.S.C. § 1268(b). (Record at 55–62). That same day, the bankruptcy court ordered the Elkins' case converted from Chapter XI to straight bankruptcy. Sometime during the pendency of bankruptcy, Elkins posted bonds to cover the cost of restoration; all the bonds, except one, have been used to pay the cost of restoration. (Brief for the Appellee at 1).

On October 6, 1982, the appellant filed a post-petition proof of claim for $69,350 in civil penalties. (Record at 17–19). The appellee objected to this claim on October 11, 1983, arguing that these civil penalties were not recoverable from the estate under Section 57(j) of the Bankruptcy Act, former 11 U.S.C. § 93(j) (1962). (Record at 20–21). After the appellant responded to the objection, contending that Section 57(j) was inapplicable to these post-petition penalties, the bankruptcy judge sustained the appellee's objection. Subsequently, the bankruptcy court denied the appellant's motion to amend or alter the order.

## II. DISCUSSION

The appellant argues that the civil penalties are necessary costs and expenses of administration which are excluded from the prohibition against allowing penalties or forfeitures because the surface mining violations arose after the petition was filed. The appellee contends that the penalties shall not be allowed under Section 57(j) and that the case of *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), is limited to cases that involve tax penalties and interest resulting from the trustee's failure to file a return for the operating business.

Section 64(a)(1) of the Bankruptcy Act, former 11 U.S.C. § 104(a)(1) (1967), provides in pertinent part:

The debts to have priority, in advance of the payment of dividends to creditors, ..., shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; ....

Section 57(j), former 11 U.S.C. § 93(j) (1962), deals with the proof and allowance of claims; it provides in part:

Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, ....

Section 57(j) plainly states that penalties imposed by the federal government are not allowed; it excludes the bulk of fines, penalties and other financial sanctions which regulate human activity. The purpose of this provision is to protect the bankrupt's general creditors from a reduction of their dividend by allowing penalties or forfeitures. 3 *Collier on Bankruptcy* ¶ 57.22[1] at 381–82 (14th ed. 1977). The statute applies only to penalties incurred before bankruptcy due to the bankrupt's delinquency. "After bankruptcy, [section 57j] does not purport to exempt the trustee from the operation of state laws, or to relieve the estate from liability for the trustee's delinquencies." *Boteler v. Ingels,* 308 U.S. 57, 59–60, 60 S.Ct. 29, 31, 84 L.Ed. 78 (1939). In that case the Court sustained a penalty against a trustee in bankruptcy who had failed to *pay* a California automobile license tax on vehicles used in the bankrupt estate he was administering. *Id.* at 61, 60 S.Ct. at 32; *see* Annot., 1 A.L.R. Fed. 657, 662 (1969).

One exception to the statutory prohibition is explicitly provided in the statute: the government may recover the amount of pecuniary loss it suffered from a financial dissipation or loss of revenue source. This exception is inapplicable in this case because the United States does not present a claim for pecuniary loss. A second, judicially-created exception occurs in tax enforcement cases. Applying the rationale of the *Boteler* decision the Court has held that a trustee was liable for penalties arising from his failure to notify the United States of taxes that accrued during a Chapter XI arrangement. *Nicholas v. United States,* 384 U.S. 678, 695, 86 S.Ct. 1674, 1685–86, 16 L.Ed.2d 853 (1966). In that

case, the trustee in bankruptcy failed to file federal tax returns or to pay federal income taxes, social security taxes and excise taxes for a corporate debtor incurred during an arrangement proceeding under Chapter XI of the Bankruptcy Act and due after the corporation went into straight bankruptcy. The Court premised its decision on three reasons. First, if the trustee were protected, the government would have the privilege to tax all businesses equally, but it "would be denied the traditional and almost universal method of enforcing prompt payment." *Nicholas v. United States*, 384 U.S. at 692, 86 S.Ct. at 1684, citing *Boteler v. Ingels*, 308 U.S. at 61, 60 S.Ct. at 32. A second, obvious reason is enforcement of the law. The penalties which the United States imposed upon the trustee of the Chapter XI arrangement is a means of enforcing prompt filing of the tax returns. *Nicholas v. United States*, 384 U.S. at 694, 86 S.Ct. at 1685. Furthermore, "[n]o legitimate interest would be served by permitting the trustee to escape the unburdensome responsibility of merely filing the returns ...." *Id.* at 695, 86 S.Ct. at 1685–86. Third, the liability of the trustee derived from his succession of the debtor in possession, and as an officer of the court, the trustee is subject to the federal taxes applicable to the business under 28 U.S.C. § 960. *Id.* at 693 n. 27, 86 S.Ct. at 1684 n. 27. *See In re Samuel Chapman, Inc.*, 394 F.2d 340 (2d Cir.), *cert. denied sub nom. New York Credit Men's Adjustment Bureau, Inc. v. United States*, 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 (1968) (trustee held liable for federal income and social security taxes incurred during operation by debtor in possession of business under arrangement proceedings).

Thus the courts have created an exception for the collection of penalties owed on delinquent taxes.

Conceding that there is no law on point, the appellant argues that the rationale of *Nicholas* and *Boteler* is applicable to the case *sub judice*. First, the appellant contends that these penalties which accrued after bankruptcy are allowable. *Boteler v. Ingels*, 308 U.S. at 59–60, 60 S.Ct. at 31; *Gough Industries, Inc. v. Rothman*, 446 F.2d 536, 540 (9th Cir.1971), *cert. denied*, 405 U.S. 916, 92 S.Ct. 933, 30 L.Ed.2d 785 (1972); *In re Los Angeles Lumber Products Co.*, 45 F.Supp. 77, 87 (S.D.Cal.1942) (allowing penalty on delinquent sales taxes and use taxes); *In re Holiday Mart, Inc.*, 9 B.R. 99, 107 (Bankr.D. Hawaii 1981) (holding that section 57(j) of the Bankruptcy Act does not apply to charges or penalties that arise from an agreement between private parties). *See generally* Annot., 1 A.L.R. Fed. 657 (1969 & Supp.1983). "The provision [section 57j] applies only to claims against the bankrupt arising *prior to bankruptcy*. It does not propose to exonerate a trustee or receiver in bankruptcy from penalties which he incurs in the course of continuous operation of the bankrupt's business." 3 *Collier on Bankruptcy* ¶ 57.22[1] at 386 (14th ed. 1977) (emphasis in original; footnotes omitted). Second, the appellant asserts that the rationale of *Nicholas* should be expanded to apply in the instant case so that the provisions of the Surface Mining Act will be complied with promptly and the purposes of the Act will not be thwarted.[1] Relying upon *Simonson v. Granquist*, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962), the appellee argues that the rationale of *Nicholas* is limit-

---

**1.** Congress found, among other things, that

  many surface mining operations result in disturbances of surface areas that burden and adversely affect commerce and the public welfare by destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural, and forestry purposes, by causing erosion and landslides, by contributing to floods, by polluting the water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, by creating hazards dangerous to life and property by de-

grading the quality of life in local communities, and by counteracting governmental programs and efforts to conserve soil, water, and other natural resources.

30 U.S.C. § 1201(c) (Supp. V 1981). Based upon this finding and others, Congress enacted the Surface Mining Act which has as one of its purposes to

  assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the surface coal mining operations.

30 U.S.C. § 1202(e) (Supp. V 1981).

ed to tax cases. The issue presented to the Supreme Court in *Simonson* was whether the United States had a right to recover federal tax penalties ripened into statutory liens against the estate of a bankrupt for taxes incurred *prior to bankruptcy*. The Court held that the tax penalty, secured by the lien, was not an allowable claim.

> [Section 57j] plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a "pecuniary" loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the broad aim of the Act to provide for the conservation of the estates of involvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors.
>
> When we turn to the language of § 67b, we find nothing that indicates a purpose to require the general creditors of a bankrupt to suffer because of penalties designed to be inflicted upon the bankrupt himself. Indeed, there is not a single word in that section regarding penalties, and the plain purpose of the section is merely to prevent certain liens, including statutory tax liens, "arising or perfected ... within four months prior to the filing of the [bankruptcy] petition," from being set aside and declared invalid under § 60 as preferential.

*Id.* at 40–41, 82 S.Ct. at 538–39 (footnotes omitted). In the minority opinion in *Nicholas*, Justice White argued that the broad policy rationale of conservation of the es-

tates of insolvents was a weighty, persuasive reason for not placing the burden of tax penalties arising postpetition upon the estate's innocent creditors. *Nicholas v. United States*, 384 U.S. at 697–98, 86 S.Ct. at 1686–87. He also indicated that "[t]here might be some grounds for rejecting the general policy against allowing penalties against bankrupt estates if the filing of the return by the trustee performed some critical function or was at least something more than an empty formality." *Id.* at 699, 86 S.Ct. at 1688. The appellee contends that the strong public policy of protecting the assets for creditors overrides the necessity to enforce the provisions of the Surface Mining Act through the imposition of penalties.

The court is of the opinion that the holdings of *Nicholas* and *Boteler* should be limited to tax cases.[2] A necessarily heavy influence in that case was the civil liability that 28 U.S.C. § 960 places upon the trustee to pay the taxes. No similar provision exists for penalties arising from violation of criminal or regulatory statutes. Furthermore, other methods of affecting prompt compliance are provided in the Surface Mining Act. *See, e.g.*, 30 U.S.C. § 1271 (mine inspector may issue cessation order, and Attorney General may institute a civil action for relief, including a permanent or temporary injunction). The penalties are assessed as punishment for belated action to abide with the Act, rather than interest on a sum due and owing, which is an aid to collection of taxes. The appellant's argument that the mining companies will seek the haven of bankruptcy to avoid paying these penalties is tenuous. Finally, the courts have held in non-tax cases that fines or charges for violation of criminal or regulatory provisions are penalties, except where actual pecuniary loss is shown. In a case decided by the Fifth Circuit Court of Appeals, Judge Fisher held that penalties assessed against bankrupts by the Commodity Credit Corporation pursuant to Sec-

---

**2.** Justice Stewart indicated that the rule in *Boteler* holding the trustee liable for nonpayment of the tax penalties may be open to some question as applied to the facts of that case, but he concluded that the rationale was stronger in the *Nicholas* case than in the *Boteler* decision. *Nicholas v. United States*, 384 U.S. at 694–95, 86 S.Ct. at 1685–86.

tion 346(a) of the Agricultural Adjustment Act, 7 U.S.C. § 1346(a), resulting from the production of cotton in excess of the farm allowment were penalties which section 57(j) precluded as allowable administrative expenses. *United States v. Moore*, 366 F.2d 243 (5th Cir.1966).

Accordingly, the court concludes that section 57(j) of the Bankruptcy Act prohibits the appellant from recovering the penalties assessed under the Surface Mining Act as administrative expenses because the rationale of *Nicholas* and *Boteler* is limited to tax cases, because the appellant has other methods to enforce the Surface Mining Act, and because the strong policy of protecting the innocent creditors outweighs the need to collect enforcement penalties.

### III. CONCLUSION

For the reasons given above, this court affirms the decision of the bankruptcy court.