In re SENECA OIL COMPANY and Seneca Drilling Company, Debtors.

UNITED STATES DEPARTMENT OF ENERGY, Plaintiff-Appellant,

v.

SENECA OIL COMPANY and Seneca Drilling Company, Defendants-Appellants.

Bankruptcy Nos. 85–00825–A, 85–00826–A.

No. CIV–86–0464–BT.

United States District Court, W.D. Oklahoma.

June 3, 1987.

See also, Bkrtcy., 65 B.R. 902.

John E. Green, Steven Mullins, Asst. U.S. Attys., Oklahoma City, Okl., Thomas C. Newkirk, Marica K. Sowles, Floyd I. Robinson, Beth N. Mizuno, U.S. Dept. of Energy, Econ. Reg. Admin., Washington, D.C. for plaintiff.

D. Kent Meyers, Crowe & Dunlevy, Oklahoma City, Okl., Emmett Marvin Martin, New York City, David A. Cheek, Eric M. Reuben, McKinney, Stringer & Webster, Oklahoma City, Okl., for defendants.

## ORDER

BRETT, District Judge.

This matter comes before the Court on an appeal by the Department of Energy ("DOE") from a November 21, 1985 order of the Bankruptcy Court confirming the Chapter 11 Plan of Reorganization for Seneca Oil Company and Seneca Drilling Company ("Seneca"). On December 12, 1985, this Court held that a portion of DOE's claim, approximately $1,282,706.95 as of March 8, 1985, was subject to a constructive trust in favor of DOE. The difference between the constructive trust amount and the DOE's total claim, some $458,890.82, remains as DOE's unsecured claim against Seneca. On November 21, 1985, the Bankruptcy Court confirmed the Reorganization Plan which subordinated the unsecured portion of DOE's claim as a "fine, penalty, or a forfeiture" under Section 726(a)(4) of the Bankruptcy Code, 11 U.S.C. § 726(a)(4). It is this subordination of the DOE's unsecured claim which is now at issue on appeal. In addition, the DOE has appealed the use of approximately $54,-690.09 out of a certain contingency account. This account was created to insure that the full amount of the constructive trust funds would be available for payment to DOE if the DOE was ultimately successful on its constructive trust claim. The Bankruptcy Court allowed payment of these administrative fees out of the trust account prior to the Court's December 12, 1985 Order upholding DOE's claim to a constructive trust.

Since the filing of the initial appeal the Department of Energy and the Seneca debtors have filed a stipulation in which they agree that the relief requested by DOE in this appeal shall be limited to the following modifications to the reorganization plan: (1) a reservation is provided in Article 5 of the Plan by the disbursing agent (as defined in the Plan) of an amount of money equal to 100% of the amount claimed by the DOE as subject to a constructive trust—i.e., $1,282,706.95 as of March 8, 1985, plus all interest earned thereon until payment over to DOE or final order or judgment denying the constructive trust claim of the DOE, and (2) a determination that the claim of the DOE in excess of its constructive trust claim shall be

treated *pari passu* with Class 6 or 7 claims as provided by Bank Creditor Plan No. 3.

The parties agree that the DOE does not seek a reversal of the Order of Confirmation entered by the Bankruptcy Court on November 21, 1985, except to the extent as set forth above.

The Court finds that the Bankruptcy Court erred in subordinating the remainder of DOE's claim for $458,761.61 on the grounds that the claim is for penalty under Section 726(a)(4) of the Bankruptcy Code. The Court finds the case of *U.S. Dept. of Energy v. West Texas Marketing Corp.*, 763 F.2d 1411 (TECA 1985) controlling here. In *West Texas Marketing*, the court held that DOE claims in bankruptcy to recover oil price overcharges are "clearly for restitution, and not for a penalty." *Id.* at 1426. The subordination issue in this case is identical to that faced by the Temporary Emergency Court of Appeals in *West Texas Marketing*. Like *West Texas Marketing*, the DOE in this case elected to seek a restitutionary refund remedy pursuant to § 209 of the Economic Stabilization Act of 1970 ("ESA"), 12 U.S.C. § 1904 note, as incorporated in § 5(a)(1) of the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. § 754(a)(1). Where, as here, the DOE seeks to recover overcharges under § 209 of the ESA, the remedy is not penal in character.[1] *See Citronelle-Mobile Gathering, Inc. v. O'Leary*, 499 F.Supp. 871, 886 (S.D.Ala.1980), *affirmed as modified on other grounds*, 699 F.2d 717 (TECA) *cert. denied*, 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1980). *See also, United States v. Sutton*, No. 82–C–1069–B, *slip. op.* at 32 (Northern District of Oklahoma, Sept. 14, 1984), *affirmed*, 795 F.2d 1040 (TECA 1986), *cert. denied*, — U.S. —, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987). The appellees herein ("the Bank Group") argue that the TECA decision in *West Texas Marketing* is not binding on the Bankruptcy Court in this case, citing *Simonson v. Granquist*, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962). The Bank Group ar-

gues that *Simonson* makes clear the congressional purpose to bar all claims of any kind against the bankrupt except those based on a pecuniary loss. Appellees urge the Court to look past the name given a claim to determine its true character and conclude that irrespective of the name given a claim, a claim is a fine, penalty, or a forfeiture if the claimant has not suffered actual pecuniary loss. *See In Matter of Unified Control Systems, Inc.*, 586 F.2d 1036 (5th Cir.1978), and *United States v. Moore*, 366 F.2d 243 (5th Cir.1966). The Bank Group urges that TECA's decision in *West Texas Marketing* that the issue of pecuniary loss is immaterial is directly at odds with the Supreme Court holding in *Simonson*. The Court is unpersuaded. The Court believes that the Court of Appeals decision in *West Texas Marketing* on the exact issue now before the Court is more compelling than the Supreme Court's interpretation of the penalty provision of the Bankruptcy Code in a tax context.

Further, the Bank Group argues that the Temporary Emergency Court of Appeals decision is not binding on the Bankruptcy Court. The Bank Group reads TECA's jurisdiction as being one of special and limited jurisdiction arguing that its exclusive jurisdiction is limited to appeals from the District Court on cases and controversies arising under the ESA/EPAA and regulations and orders issued thereunder. The Bank Group contends that the jurisdictional grant to TECA must be strictly construed and that the court in *West Texas Marketing* should never have decided the question of bankruptcy law in determining that the pecuniary claim was not a penalty for the purposes of § 726(a)(4).

It is clear from a reading of § 211(b) of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 note, § 211(b) that the TECA is vested with all the powers of a Circuit Court of Appeals. Therefore, the Court believes the TECA's decision is to be given all the weight that

---

1. The DOE's claim here resulted from a judgment in CIV–81–215–T, W.D.Okla.1985 (Judgment entered July 3, 1985). In that case the DOE, Plaintiff-Appellant herein, sought recovery of oil price overcharges under § 209 of the "ESA" of 1970, and not to recover civil and criminal penalties under § 754(a)(4) of the EPAA.

any other Court of Appeals decision would be accorded and its decision should be followed where the Supreme Court and Tenth Circuit Court of Appeals have not expressly decided the issue.

"We have said several times that even if the case is one arising under EPAA, our jurisdiction depends on 'the nature of the issue that is presented to us and not [on] the nature of the case or controversy presented below' ..."

*Placid Oil Co. v. Ashland Oil, Inc.*, 792 F.2d 1127 (TCA 1986), citing *MGPC, Inc. v. Department of Energy*, 673 F.2d 1277, 1281 (TECA 1982), citing *Gulf Oil Corp. v. Department of Energy*, 639 F.2d 766, 767 (TECA 1981). *See also Stertz v. Gulf Oil Corp.*, 783 F.2d 1064, 1068–69 (TECA 1986); *Department of Energy v. West Texas Marketing Corp.*, 763 F.2d 1411, 1421–22 (TECA 1985); and *Scallop Corp. v. Tully*, 705 F.2d 645 (2d Cir.1983). The Court finds that the only reported bankruptcy case subordinating a DOE claim as a penalty, *In re Compton*, 40 B.R. 875 (Bankr.N. D.Tex.1984), was decided before the decision in *West Texas Marketing* and is of little value. Therefore, the Court finds that the DOE's claim in this bankruptcy action was erroneously subordinated as a penalty pursuant to § 726(a)(4) of the Bankruptcy Code. Pursuant to the stipulation of the parties herein, the Court hereby determines that the claim of the DOE in excess of its constructive trust claim shall be treated *pari passu* with Class 6 or 7 claims as provided by Bank Creditor Plan No. 3 as confirmed by the Bankruptcy Court. (*See* page 15 of the Combined First Amended Bank Creditor Plan confirmed by the Bankruptcy Court Order of November 21, 1985).

■ The next issue presented in this appeal is whether the Bankruptcy Court erred in allowing administrative fees to be satisfied out of the debtor's unencumbered cash on hand at the petition date. In the reorganization plan, as confirmed, a contingency account was created in the amount of $1,297,629.11, to be used in the event that the DOE ultimately prevailed in proving its constructive trust claim. The DOE claims on appeal that such contingency account is deficient in the sum of $54,690.09, which represents the payment of three of the Estate's administrative fee applications allegedly out of the DOE's trust funds. The Court finds that the Reorganization Plan, as confirmed, properly created the contingency account in the amount of $1,297,629.11.

It is important to note that the Bankruptcy Court approved the $54,690.09 in administrative fees for professional services and did not prohibit the debtor from using the unencumbered cash on hand which was ultimately used to pay such allowances. At the time the Bankruptcy Court allowed the administrative fees, there was no stay of the reorganization or the establishment of an escrow account for the DOE's constructive trust claim. It was only after the Bankruptcy Court's allowance of the fees and the confirmation of the Plan that the District Court ultimately reversed the Bankruptcy Court and held that the DOE was entitled to a constructive trust on the debtor's unencumbered cash on hand at the petition date. The Department of Energy does not question the Bankruptcy Court's authority to allow such claims but argues in hindsight that the Bankruptcy Court should have ordered the fees paid out of cash collateral and not out of the debtor's general cash. The Court finds that the Bankruptcy Court did not err and that pursuant to 11 U.S.C. § 503, 11 U.S.C. § 330, and 11 U.S.C. § 105, the Bankruptcy Court had and properly asserted its authority to allow the administrative fees to be paid out of the debtor's cash on hand.

The Department of Energy argues "the deficiency in the contingency account of $54,690.09 represents the payment of three of the Estate's administrative fee applications allegedly out of DOE's trust funds." This argument misstates the source of the fee applications' funding. The DOE had no trust fund until this Court's December 12, 1985 Order upholding the DOE's claim to a constructive trust. As no constructive trust was created until the December 12, 1985 Order, the debtor was entitled to pay the administrative fees according to the Bankruptcy Court's Order.

The DOE claims that pursuant to § 1107 of the Bankruptcy Code, Seneca, as debtor-

in-possession, has all the rights, powers, functions and duties of a trustee. The DOE argues that one of the duties of a trustee pursuant to § 704 of the Code is to be "accountable for all property received." Therefore, argues the DOE, since Seneca held the overcharged funds in its possession at the time it filed its bankruptcy petition, it is thus accountable for the full amount of those funds plus interest hereon, undiminished by the payment of administrative expenses. The DOE's citations in support of that argument arise in the context of a constructive trust. As previously stated, until the December 12, 1985 Order, no constructive trust was present on the debtor's unencumbered cash on hand and therefore the trustee was within its rights to use such funds to pay the administrative expenses as authorized by the Bankruptcy Court. The Court therefore finds that the Bankruptcy Court properly confirmed the Plan which created a contingency account in the amount of $1,297,629.11 as of the date of confirmation, to be used in the event that the DOE ultimately prevails in proving its constructive trust claim.