500 F.2d 1208
 STATE BOARD OF EQUALIZATION and the Department of Human
Resources Development, Petitioners and Appellants,
v.
John P. STODD, Respondent and Appellee.
In the Matter of P.R.O. ENTERPRISES, INC., a California
Corporation doing business as Costa Mesa Golf and
Country Club, Bankrupt.
 No. 72-2447.
 United States Court of Appeals, Ninth Circuit.
 July 29, 1974.
 
 1
 Rodney Lilyquist, Jr. (argued), Deputy Atty. Gen., Los Angeles, Cal., for petitioners and appellants.
 
 
 2
 Richard F. Broude (argued), of Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for respondent and appellee.
 
 
 3
 Before ELY and HUFSTEDLER, Circuit Judges, and TURRENTINE, District Judge.*
 
 OPINION
 TURRENTINE, District Judge:
 
 4
 On March 31, 1969, P.R.O. Enterprises, Inc. filed a petition for an arrangement under 332 of the Bankruptcy Act. It was adjudicated a bankrupt on November 10, 1969.
 
 
 5
 Two state agencies filed claims in the bankruptcy proceedings. On April 30, 1969, the California Department of Human Resources (the Department') filed a tax claim of $6,436.03, and on June 19, 1969, the California Board of Equalization (the 'Board') filed a tax claim of $10,320.85. Both claims were for the principal and pre-petition interest on delinquent taxes. Neither claim included tax penalties or post-petition interest, presumably because payment of these items from the estate of a bankrupt is forbidden by 57j of the Bankruptcy Act.[1]
 
 
 6
 One of the assets of the bankrupt was an institutional liquor license, which the Trustee sold for $6,000 in cash in February 1970.
 
 
 7
 Pursuant to state law[2] and standard procedure, the California Department of Alcoholic Beverage Control informed the Trustee that it would not approve the transfer of the liquor license until the state tax liability incurred by P.R.O. was paid up to the value of the license. Since the state agencies' claims far exceeded the value of the license, the Trustee paid the entire $6,000 to the agencies.
 
 
 8
 The Department received $2,228.43, of which it applied $1,038.44 to penalties and post-petition interest and the remainder towards the $6,436.03 claim for tax delinquencies and pre-petition interest. It then filed an amended bankruptcy claim of $5,246.04.
 
 
 9
 The Board received $3,671.57, of which it applied $2,019.96 to penalties and post-petition interest and the remainder towards the $10,320.85 claim for tax delinquencies and pre-petition interest. It then filed an amended claim of $8,669.24.
 
 
 10
 The Trustees paid each agency the amount of its amended claim less the sums which each had applied to penalties and post-petition interest. Subsequently, on February 11, 1972, the Referee in Bankruptcy issued a Memorandum Opinion approving the action of the Trustee and holding that the proceeds obtained from the sale of the license could not be applied to penalties and post-petition interest because of the mandate of 57j. The Referee concluded that the license was an asset of the estate and the proceeds from its sale could not be applied to penalties and post-petition interest. The District Court affirmed the Referee's order.
 
 
 11
 The question on appeal is whether the state agencies may apply funds received from the Trustee during the pendency of the bankruptcy administration towards the payment of penalties and post-petition interest. Normally payment of these items is forbidden by 57j of the Bankruptcy Act if they are included in the bankruptcy estate.
 
 
 12
 The appellant agencies concede that penalties and post-petition interest are generally non-allowable claims which cannot be asserted in bankruptcy proceedings. But they argue that the funds received as a condition of transfer were received wholly outside the bankruptcy proceedings and the application of the funds by the agencies was therefore not within the jurisdiction of the bankruptcy court. Appellants cite Ruhter v. Internal Revenue Service, 339 F.2d 575, 576 (10th Cir. 1964) as presenting an indentical situation where penalties and post-petition interst were paid to the Internal Revenue Service outside of bankruptcy proceedings. Ruhter is not controlling. In that case the funds never became part of the bankrupt estate and were not bankruptcy assets. The Trustee never had them in his possession. The funds were realized from the sale of property that was wholly outside of the bankruptcy estate. In the instant case the liqupor license and proceeds from its sale were a part of the bankrupt's estate, to which title passes to the Trustee under 70a(5) of the Bankruptcy Act. The $6,000 proceeds passed through the Turstee's possession by court order.
 
 
 13
 Once funds are part of the bankrupt estate, they may not be used to pay tax penalties and post-petition interest under 57j. Even penalty claims secured by liens on the bankruptcy assets are not allowable in bankruptcy. Simonson v. Granquist, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962).
 
 
 14
 The state has attempted to accomplish indirectly what it could not do directly by applying the $6,000 to the penalty and post-petition interest and filing an amended claim for the remainder of the delinquent taxes and pre-petition interest. The situation is similar to that in United States v. Coleman (In re Brewster-Raymond Company), 344 F.2d 903 (6th Cir. 1965), where the court held that the United States government could not set off penalties and post-petition interest against a government debt to the bankrupt on a Navy contract. Here the court is dealing with the proceeds of a sale of a license rather than a set-off, but the principle is the same. Both the set-off and the license are assets of the bankruptcy estate. Section 57j imposes a restriction on the use of such assets.
 
 
 15
 The state may refuse to transfer the liquor license, but it cannot determine how the assets of the bankrupt estate should be distributed.
 
 
 16
 The order of the District Court and the Bankruptcy Referee is hereby affirmed.
 
 
 
 *
 Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation
 
 
 [1]
 Section 57j of the Bankruptcy Act reads as follows:
 Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law.
 
 
 [2]
 California Business & Professions Code 24049 reads as follows:
 The department may refuse to transfer any license when the applicant is delinquent in the payment of any taxes due under the Alcoholic Beverage Tax Law, the Sales and Use Tax Law, the Personal Income Tax Law, or the Bank and Corporation Tax Law, when such tax liability arises in full or in part out of the exercise of the privilege of an alcoholic beverage license, or any amount due under the Unemployment Insurance Code when such liability arises out of the conduct of a business licensed by the Department of Alcoholic Beverage Control.