**In re Douglas P. DEMARAH,
Debtor/Plaintiff,**

v.

**The UNITED STATES of
America, Defendant.**

No. CV–F–93–5174.

United States District Court,
E.D. California.

Dec. 6, 1993.

Affirmed by 62 F.3d 1248.

David J. Fillerup, Bakersfield, CA, for debtor/plaintiff.

Jeffrey R. Meyer, U.S. Department of Justice, Trial Attorney, Tax Division, Washington, DC, for U.S.

MEMORANDUM OPINION AND ORDERS RE: GOVERNMENT'S APPEAL AND DEBTOR'S CROSS–APPEAL FROM ORDERS OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

WANGER, District Judge.

## I. PROCEDURAL HISTORY

This is an appeal by the U.S. from the January 15, 1993, order of the Bankruptcy Court for the Eastern District of California (Bakersfield Division), granting summary judgment for the debtor on his cross-motion for summary judgment and denying the government's motion for summary judgment under Bankruptcy Code §§ 522(h) and 724(a).

The essential facts are undisputed. On April 29, 1991, Debtor filed a Chapter 7 petition, listing unencumbered equity of $10,736 in property. At the time he filed his Chapter 7 petition, Debtor owed taxes. The I.R.S. properly filed notices of a tax lien in the amount of $38,789.92 prior to debtor's filing of his bankruptcy petition. The I.R.S. filed a proof of claim on May 22, 1991, for $42,050.59 in estimated tax liabilities. These liabilities are summarized as follows:

## SECURED TAX CLAIMS

| Type of Tax | Tax Period | $Amount | $Interest | $Penalty |
| --- | --- | --- | --- | --- |
| 941 | 09–30–86 | | | |
| —Trust Fund | | 6,715.86 | 6,088.76 | 4,349.22 |
| —non Trust Fund | | 0.00 | 1,786.19 | 1,618.60 |
| 941 | 12–31–86 | | | |
| —Trust Fund | | 5,775.30 | 3,281.21 | 1,987.58 |
| —non Trust Fund | | 524.28 | 1,309.03 | 828.20 |
| 1040 | 12–31–87 | 2,743.15 | 685.78 | 1,096.66 |

## UNSECURED PRIORITY TAX CLAIMS

| | | | | |
| --- | --- | --- | --- | --- |
| 940 | 12–31–86 | 649.81 | 369.01 | 0.00 |
| 940 | 12–31–87 | 742.21 | 317.06 | 182.68 |
| 1040* | 12–31–90 | 1,000.00 | 0.00 | 0.00 |

*—estimated

---

Debtor filed an adversary proceeding September 18, 1991, challenging the I.R.S. claims because they exceeded the amount alleged as the total value of his property. Debtor never advanced any specific grounds of non-allowability of the tax claims under 11 U.S.C. § 502(a). The Bankruptcy Court impliedly "allowed" the tax claims. Debtor has not appealed the issue of allowability. The issue of the allowance of the federal tax claims is waived on appeal.

Debtor sought to void the tax liens to the extent that they were undersecured and to the extent they secured penalties. He asked the Court to determine the dischargeability of the taxes, the extent and allocation of the tax lien.

The I.R.S. conceded that the 940 FUTA taxes for the periods 1986 and 1987 are unsecured general claims. The Bankruptcy Court, by agreement of the parties, determined dischargeability as follows:

*Dischargeable taxes:*

1) personal income tax liability for the tax year 1987: $2,743.1;,

2) federal unemployment taxes under Form 940 for taxable years 12/31/86 and 12/31/87: $1,392.0;

3) non-trust fund portions of Form 941 tax liabilities for the taxable periods 9/30/86 and 12/31/86: $524.28; and

4) interest attributable to each of those liabilities: $4,467.07;

The Court determined as dischargeable over the government's objection:

5) penalties attributable to all tax liabilities: $10,062.94.

*Non-dischargeable taxes:*

1) the personal income tax liability for taxable year 1990: $1,000.00;

2) trust fund portions of 941 tax liabilities for taxable periods 9/30/86 and 12/31/86: $12,490.16;

3) the interest attributable to those tax liabilities: $9,369.97.

The Bankruptcy Court held the federal tax lien avoidable to the extent it secured penalties for each of the tax years and periods claimed. This holding is the subject of the government's appeal.

On September 30, 1991, debtor filed a Chapter 13 proceeding to avoid IRS enforcement of the liens. Although the parties stipulated to an order that the decisions in the adversary proceeding in the Chapter 7 case would control the Chapter 13 case (Order of September 9, 1992), the Bankruptcy Court declined to determine the amount of the government's secured claim, to allocate the secured claim among the various types of tax and tax periods, and to rule on the debtor's attempt to strip down the tax lien under 11 U.S.C. § 506(d). Debtor cross-appealed seeking a determination of these issues.

The government objected to the jurisdiction of the Bankruptcy Appellate Panel. The appeal and debtor's cross-appeal were consolidated by stipulation. Jurisdiction in this Court exists under 28 U.S.C. § 158.

## II. DISCUSSION

■ The bankruptcy court's conclusions of law are subject to de novo review. *Matter of Lockard,* 884 F.2d 1171, 1174 (9th Cir.1989).

### A. The Government's Appeal

The debtor objected to the IRS tax claims in the Chapter 7 proceeding. Under Section 502, a bankruptcy court is authorized to determine, upon objection, whether a creditor's claim may be allowed; i.e., whether the claim is valid under applicable non-bankruptcy law and whether the Bankruptcy Code authorizes that type of claim to be paid from the Estate. The debtor advanced no arguments against nor was the allowability of the tax claims presented for decision by the Bankruptcy Judge. The Court's orders presume allowable tax claims. The issue of allowability of the tax claims has been waived on appeal.[1]

■ Where the creditor asserts that an allowed claim is secured by a lien on property in which the Estate has an interest, Section 506(a) defines the extent to which that claim will be considered a "secured claim." If the value of the property which secures the debt is less than the allowed claim, Section 506(a) provides: "[The creditor holds] a secured claim to the extent of the value of such creditor's interest in the Estate's interest in such property" and "... an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." *Dewsnup v. Timm,* 502 U.S. 410, 414, 112 S.Ct. 773, 777, 116 L.Ed.2d 903 (1992).

Once a claim is bifurcated, 11 U.S.C. § 507(a) determines what priority will be given to that portion of the under-secured claim that has become an unsecured claim. Those unsecured claims which are not provided priority of distribution under § 507(a)

fall into the residual category known as "general unsecured claims."

The parties agree that the I.R.S. asserted a secured claim based upon properly filed notices of tax lien. 26 U.S.C. § 6321 describes the extent of a federal lien for taxes:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, ... or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to such property, whether real or personal, belonging to such person.

The IRS claims the debtor's tax liability on the date of filing of his Chapter 7 bankruptcy petition is $42,050.59. The parties stipulated the debtor's unencumbered value of property in the bankruptcy estate is $10,736.00. The Notice of Federal Tax Lien filed by the government secured $38,789.82 in federal tax liability. The parties agree that under Section 506(a) the claimed secured liability of $38,789.82 is bifurcated into: a secured tax claim of $10,736.00 and an unsecured claim for the remainder, $28,053.82. The unsecured claim represents both unsecured priority claims and unsecured general claims. The government claims priority for $20,-861.13, which represents trust fund taxes and associated interest. 11 U.S.C. § 507(a)(7)(C) gives a seventh priority to trust fund taxes. Pre-petition interest on those taxes is also given priority. *In re Garcia,* 955 F.2d 16, 18–19 (5th Cir.1992).[2]

This appeal centers on the bankruptcy court's ruling that a Chapter 7 debtor can avoid tax liens to the extent they secure a claim for tax penalties. 26 U.S.C. § 6321 creates a lien for unpaid taxes, which. includes interest and assessable penalties. *In*

---

1. The debtor argues that the absence of a distribution from the bankruptcy estate precludes the existence of an allowable claim. No specific authority is cited for this meritless contention, moreover, no issue is identified in the cross-appeal going to the allowance of claims.

2. The government claims the 941 trust fund liabilities for the quarterly periods ended 9/30/86 and 12/30/86 are nondischargeable priority claims regardless of the extent of debtor's assets. Under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(7)(C)

it is provided that a debt for a tax of a kind specified in § 507(a)(7) is not discharged. § 507(a)(7)(C) gives priority to claims for a tax required to be collected or withheld and for which the debtor is liable in whatever capacity. The 941 trust fund liabilities are employment taxes, required to be withheld when wages are paid. 26 U.S.C. §§ 3101, 3402. The employer is liable for the payment of these taxes under 26 U.S.C. §§ 3102, 3403, 7501.

*re Bates,* 974 F.2d 1234, 1236. *Bates* held that although as a general rule noncompensatory penalties are non-priority claims, because "a federal tax lien secures . . . penalties, . . ." such penalties are to be treated as a seventh priority and as secured claims to the extent of the value of the debtor's property. *Id.,* at p. 1237. The issue of priority is not germane to the government's appeal.

The debtor sought to avoid the federal tax lien for penalties by application of 11 U.S.C. § 522(h). That section provides:

> The debtor may avoid a transfer of property of the debtor or recover a set off to the extent that the debtor could have exempted such property under [Section 522(g)(1) ] if the trustee had avoided such transfer, if:
>
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
>
> (2) the trustee does not attempt to avoid such a transfer.

Section 724(a) provides avoidance powers to the trustee: "The trustee may avoid a lien that secures a claim of a kind specified in sections 726(a)(4) of this title. Section 726(a)(4) states:

> (a) Except as provided in section 510 [3] of this title, property of the estate shall be distributed—
>
> .        .        .        .        .
>
> (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any . . . penalty, . . . to the extent that such a . . . penalty, . . . are not in compensation for actual pecuniary loss suffered by the holder of the claim.

Section 522(h) thereby permits the debtor to invoke the trustee's avoiding powers to the extent the debtor could have exempted the property involved. There is a further limitation upon this avoidance power, if a tax lien is at issue. 11 U.S.C. § 522(c)(2)(B) provides:

**3.** 11 U.S.C. § 510 recognizes the validity of subordination agreements in bankruptcy. The sec-

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under § 502 of this title as if such debt had arisen, before the commencement of the case, except—
>
> .        .        .        .        .
>
> (2) A debt secured by a lien that is—
>
> .        .        .        .        .
>
> (B) A tax lien, notice of which is properly filed.

The government argues that otherwise exempt property remains liable under § 522(c)(2)(B) for a properly perfected tax lien. Two reasons are advanced: (1) section 724(a) avoidance powers apply only to "property of the estate;" (2) the statutory purpose of section 724, protecting unsecured creditors, no longer applies to exempted property citing *In re Carlton,* 19 B.R. 73, 75 (D.N.Mex.1982). The Court in *Carlton, supra,* analyzed the legislative history of Section 522(c)(2)(B), which expresses the intent to insulate exempt (non-bankruptcy estate) property from pre-petition claims other than dischargeable and non-dischargeable tax claims. Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, pp. 5787–5882.

Debtor claims the lien for all tax penalties is avoidable, but does not explain why. A bankruptcy case, *In re Gerulis,* 56 B.R. 283, 288 (D.Minn.1985), cited by the government, holds that where a valid tax lien has been filed, the lien was not avoided for tax penalties as to non-exempt property.

Debtor claims section 522(g)(1) allows him to exempt property recovered by the trustee under Code sections 510(c)(2), 542, 543, 550, 551, or 553, to the extent the property could have been exempted under section 522(b) had it not been transferred, if the transfer was not voluntary and the property was not concealed. Legislative history to sections 724(a) and 726(a)(4) discusses noncompensatory tax penalties:

tion does not apply in this case.

... Paragraph (4) [of Section 726(a) ] provides that punitive penalties, including prepetition tax penalties, are subordinated to the payment of all other classes of claims except claims for interest accruing during the case ...

Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5883.

▮ Nevertheless, Debtor cannot avoid the tax penalties in this case. In the *Carlton* case, the debtors homesteaded their property under the exemption provided by New Mexico law, and sought to avoid tax penalties under sections 724(a) and 726(a)(4). As here, the I.R.S. argued that the liens were preserved under Section 522(c)(2)(B), and that Section 726(a)(4), which permits application of Sections 522(h) and 724(a), applies only to property that is part of the estate. *Carlton* found that the statutory purpose of Section 724(a) is to protect unsecured creditors from the debtor's wrongdoing. There, as here, allowing the debtor to avoid the penalties on taxes does not protect unsecured creditors, because the penalties diminish the value of property exempt from the bankruptcy estate and out of the reach of the creditor pool.

Debtor argues that *In re Carlton* was wrongly decided. He asserts that 11 U.S.C. Section 522(h) provides the relevant statutory purpose: to protect the debtor and preserve the debtor's *exemptions*, to enable debtor to obtain a fresh start. (Emphasis added). However, legislative intent underlying Section 522 provides that the Debtor receive powers no greater than those of the trustee. House and Senate Reports, Reform Act of 1978, 11 U.S.C. Section 522(h) states:

"If the trustee does not pursue an avoiding power to recover a transfer of property that would be exempt, the debtor may pursue [the avoiding power] and exempt the property ... It is not intended that the debtor be given an additional opportunity to avoid a transfer or that the transferee have to defend the action twice. Rather, the section is primarily designed to give the debtor the rights the trustee could have pursued if the trustee chooses not to pursue them. The debtor is given no

greater rights under this provision than the trustee ..."

Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, pp. 5862–3.

The trustee's avoiding powers under Section 724(a) are limited to the types of liens secured by claims specified in Section 726(a)(4). Section 726(a)(4) concerns noncompensatory tax penalty claims. However, § 726(a)(4) does not stand in isolation, it is a part of Section 726 which is concerned only with "property of the estate." 11 U.S.C. § 726(a)(4) allows the trustee to avoid claims for penalties against the property. of the estate. The avoiding powers of Debtor, like those of the trustee, are limited to penalty claims against property of the estate.

The government reads *In re Carlton* too broadly. *Carlton* does not expressly hold that a tax lien for noncompensatory penalties against the property of the bankrupt estate cannot be avoided. The *Carlton* court notes that the purpose of Section 724(a) is to "protect unsecured creditors from the debtor's wrongdoing by permitting 'the trustee to avoid a lien that secures [a claim of a kind specified in Section 726(a)(4) ] to the extent that the claim is not compensation for actual pecuniary loss.'" Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5882. The government cites *State Board of Equalization v. Stodd,* 500 F.2d 1208 (9th Cir.1974) for the proposition that enforcement of penalties against the estates of bankrupts, would serve not to punish delinquent taxpayers, but rather their entirely innocent creditors. *Stodd* discusses former Section 57j of the bankruptcy law and does not discuss the effect of payment of tax penalties from the property of the debtor. *Carlton* held unavoidable a tax lien for noncompensatory tax penalties sought to be asserted against property not within the bankruptcy estate.

The order of the Bankruptcy Court to the extent that it permits avoidance of the tax lien for tax penalties asserted against property not within the debtor's estate is REVERSED. The exempt property of the

debtor is subject to the tax lien for unpaid tax penalties.

### B. Debtor's Cross–Appeal

Debtor claims that the bankruptcy court erred in declining to allocate, and to determine the extent of the secured federal tax claim. Debtor argues that the lien is void to the extent that it exceeds the declared assets, and that the I.R.S. is not entitled to allocate the lien in any manner it sees fit.

█ It is generally agreed, and neither party disputes, that the bankruptcy court may abstain from determining issues not necessary to or that would not affect the administration of the bankruptcy case. See, e.g., *In re Richardson,* 97 B.R. 161, 162 (Bankr. W.D.N.Y.1989); *In re Kaufman,* 115 B.R. 378 (Bankr.S.D.Fla.1990). The government argues the court below correctly declined to rule on these issues because the present liquidation was in progress and any opinion would be advisory. However, the parties stipulated in the Bankruptcy Court that the confirmed Chapter 13 plan would be modified in accordance with the outcome of this Chapter 7 adversary proceeding and an order was entered on that stipulation. Allocating and determining the extent of the federal tax lien is thus necessary to the resolution of the Chapter 13 case.

█ Discharge from Chapter 7 liquidation and Chapter 13 reorganization is an integral part of the bankruptcy case. See House Judiciary Report, 11 U.S.C. Section 727; House Judiciary Report, 11 U.S.C. Section 1328. A decision here is necessary because: (1) the bankruptcy court ordered that the Chapter 7 determination controls the Chapter 13 proceeding; and (2) enforceable tax liens may survive the bankruptcy discharge. See generally, *Matter of Hunter,* 970 F.2d 299, 310–311 (7th Cir.1992). A central purpose of the Bankruptcy Code is to provide a fresh start for debtors. See, e.g., *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, (1991). While Debtor has received his Chapter 7 discharge, the extent to which he will obtain a "fresh start" from the Chapter 7 and 13 proceedings depends on the extent of the federal tax lien encumbering Debtor's post-discharge property. Determining the nature, extent, and allocation of the secured tax claim is appropriate and necessary in this Chapter 7 case.

The total tax liability of $38,789.82 is separated into a secured tax claim of $10,736.00 (the total value of Debtor's property) and an unsecured claim for the remainder, or $28,053.82.[4] Debtor argues that the federal tax lien is void to the extent that it exceeds the secured tax claim. 11 U.S.C. Section 506(d) provides that a lien is void to the extent that it secures a claim against the debtor that is not an allowed secured claim. Debtor argues that because the lien is not secured beyond $10,736.00, it is void beyond that amount.

█ The government maintains that § 506(d) does not void the undersecured portions of any lien against the Debtor. In *Dewsnup v. Timm, supra,* 502 U.S. at p. 414, 112 S.Ct. at p. 777, the Supreme Court held that a claim is an allowed, secured claim for purposes of Section 506(d) if it is allowed under Section 502. Thus, a lien can only be voided under Section 506(d) if the underlying claim is disallowed; it cannot be voided pursuant to Section 506(d) simply because it is undersecured. *Id.* An allowed claim is secured to the extent of the value of the creditor's interest in the estate's interest in such property and is unsecured to the extent that the value of the creditor's interest is less than the amount of the allowed claim.

Debtor counters that the underlying claim is not allowed because he objected to the claim. The government insists that its claim is allowed pursuant to 11 U.S.C. Section 502. 11 U.S.C. Section 502(a) states that a claim or interest is deemed allowed unless a party in interest timely and properly objects. Debtor objected to the I.R.S. claim. Pursuant to 11 U.S.C. Section 502(b), the bankruptcy court held a hearing to determine allowability and amount of the claim. By determining the amount of the lien and the dischargeability of the tax liabilities, the

---

4. The unsecured claim represents both unsecured priority claims and unsecured general claims. The total priority claim is $20,861.13 for trust fund taxes and interest [I.R.Code § 507 and § 507(a)(7)(C) ] and 1990 personal income tax [I.R.Code § 507(a)(7)(A)(i) ].

bankruptcy court implicitly allowed and determined the amount of the tax claims, some of which were held dischargeable and others nondischargeable.

Debtor also argues that because there has been no distribution of the property of the estate, the government's claim cannot exist, because the entire purpose of a claim is to determine distribution of the estate. Debtor cites no authority that forbids the existence of a claim in a case where a distribution has not yet occurred. No distribution can occur until this adversary proceeding is resolved. The undersecured portion of the government's tax lien will survive as an unsecured claim for $28,053.82.

The types of tax, tax periods, and amounts of tax, penalty, and interest potentially subject to the secured claim, pursuant to the recorded tax lien are as follows:

| Kind of Tax | Tax Period | $Amount | $Penalty | $Interest |
|---|---|---|---|---|
| 941 | 09–30–86 | 6,716 | 5,968 | 7,875 |
| 941 | 12–31–86 | 6,300 | 2,816 | 4,590 |
| 1040 | 12–31–87 | 2,743 | 686 | 1,097 |

The parties accept the Bankruptcy Court's determination of the dischargeability of the various taxes. Secured tax liens not avoided under § 724(a) survive the bankruptcy discharge unaltered. *Matter of Hunter*, 970 F.2d 299, 310 (7th Cir.1992). Although a debt is discharged pursuant to 11 U.S.C. § 524(a)(2), a perfected lien continues to exist under § 522(c)(2)(B). *Id.* The tax lien is enforceable post-discharge against exempted property of the debtor. *Id.* Allocation of the secured claim is critical to both parties. If applied to dischargeable taxes, it will continue to encumber the debtor's property post-discharge.

Because the secured claim is in the amount of $10,736.00, it must be allocated among the various types of tax and tax periods shown above. Debtor advocates applying it first to principal in the oldest tax period, then to interest in the oldest tax period, then to principal in the second oldest tax period, then to interest in the second oldest tax period, and so on until exhausted.

The IRS wishes to modify this approach by applying the $10,736 security first to the oldest dischargeable taxes, then to the second oldest dischargeable taxes, and so on until exhausted.[5] The government hopes to avoid expending its secured claim on non-dischargeable taxes, thus maximizing Debtor's liability. Under this approach, the Debtor would emerge from bankruptcy with property encumbered by an I.R.S. lien.

The parties call upon the District Court to determine which of the two methods is superior. Debtor argues that his is the more logical. Debtor's plan more roughly parallels the approach used with other liens—the first to attach is secured before any other, and so on.[6] Under Debtor's plan, the $10,736.00 security would be applied entirely to the 941 tax lien, which attached on 9–30–86. It includes trust fund taxes in the amount of $6,715.86 and $6,088.76 in interest, $3,855.00 of that claim, as well as the entirety of the other tax claims, would go unsecured. Because the Form 941 is a non-dischargeable tax, the debtor's approach would prevent dischargeable taxes from affecting him post-discharge.

■ The I.R.S. argues that it is entitled to employ its own scheme in order to protect its claim, where, as here, the debtor's assets are insufficient to cover the entire claim. *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 801–3 (9th Cir.1987) confirms the government's position. A taxpayer who makes voluntary payments to the IRS has the right to designate to which liability the payment will be applied. *Id.* at 801. In *In re Technical Knockout Graphics, Inc.*, the Ninth Circuit addressed the issue of whether payment of taxes after the debtor has filed a petition for bankruptcy reorganization under Chapter 11, but prior to confirmation of the Chapter 11 plan, is voluntary. The court found that the payments were not voluntary, and the I.R.S. was entitled to apply them as it saw fit.

Debtor notes that *In re Technical Knockout Graphics, Inc.* was a Chapter 11 case.

---

5. Of the remaining liability, $21,861.13 will be priority liabilities and $9,453.46 will fall into the general unsecured category.

6. Perfection of the liens is not an issue, as the I.R.S. is the only creditor of the estate.

In reaching its decision, the Circuit Court was motivated by concerns that apply equally to a Chapter 7 liquidation. In that decision, the court reasoned:

> By filing a bankruptcy petition, the debtor enjoys the protection of an injunction barring secured and unsecured creditors from pursuing the debtor without court intervention. A debtor-in-possession is required to obtain the court's permission to make payments other than in the ordinary course of business ... By filing a bankruptcy petition under Chapter 11, TKO used the authority of the court to keep its creditors at bay while it reorganized and regained financial stability. TKO is not free to abuse this system by designating its payments in a way that benefits only its responsible persons, and possibly harms ... the I.R.S. The I.R.S. is entitled to apply TKO's payments as the I.R.S. sees fit, to pursue the right of the I.R.S. to pursue responsible persons under 26 U.S.C. Section 6672.

The court was mainly concerned that the Debtor not use the protections afforded during bankruptcy proceedings in order to designate payments in a way to benefit only itself to the possible detriment of other creditors. These concerns apply equally to liquidation proceedings. Indeed, the Debtor in *In re Technical Knockout Graphics, Inc.* sought to avoid the ruling of the Court by noting that the payments were not actually made under a reorganization plan. The Court rejected the distinction, basing its decision on the unfairness of allowing the debtor to use the bankruptcy protections to benefit responsible persons while harming creditors.[7]

Whether the payments are made pre- or post-confirmation is irrelevant to the determination of their voluntariness. *In re Condel, Inc.*, 91 B.R. 79, 82 (9th Cir. BAP 1988).

Debtor seeks also to distinguish its case from *In re Technical Knockout Graphics, Inc.*, by asserting that payments are not at issue in this case. Technically, the issue is the allocation of various tax liabilities for which partial security exists. It is possible that no payments will be made, but rather that Debtor will satisfy his tax liabilities by turning over liened property. Nevertheless, this qualifies as an "involuntary payment" under the tax code. See *In re Technical Knockout Graphics, Inc.*, noting that the cases "uniformly define an involuntary payment as one made pursuant to judicial action or some form of administrative seizure, like a levy." *Id.* at 802.

## III. CONCLUSION

For all the reasons stated above, the order of the Bankruptcy Court which avoids tax lien for tax penalties asserted against property not within the bankrupt estate is REVERSED.

FURTHER ORDERED that this case is REMANDED to the Bankruptcy Court for the Eastern District of California (Bakersfield Division) for entry of an order allocating the amount and extent of the tax liens at dispute.

---

7. See also *In re Stanmock, Inc.*, 103 B.R. 228, 232 (9th Cir. BAP 1989), noting that decisions favoring treatment of plan payments to the I.R.S. as involuntary have been based mainly upon the restrictions, affecting the debtor's freedom of action, that are attendant to the bankruptcy. These restrictions, some of which are listed in *In re Technical Knockout Graphics, Inc.* (e.g., the debtor is not free to deal with estate property as he pleases, the debtor may not make payments out of the ordinary course of business), prevail in Chapter 7 cases as well.