**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

In re:                          )     BAP No.   OR-16-1300-BJuF
                                )
CECIL C. GILL,                  )     Bk. No.   3:16-bk-30589-RLD
                                )
                  Debtor.       )
_____ )
                                )
CECIL C. GILL,                  )
                                )
                  Appellant,    )
                                )
v.                              )     **O P I N I O N**
                                )
RANA KIRRESH; STEPHEN P.        )
ARNOT, Chapter 7 Trustee,       )
                                )
                  Appellees.    )
_____ )

Submitted Without Oral Argument
on July 27, 2017

Filed - September 26, 2017

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Randall L. Dunn, Bankruptcy Judge, Presiding

_____

Appearances:   Appellant Cecil C. Gill, pro se, on brief;
               Appellee Stephen P. Arnot, Chapter 7 Trustee, pro
               se, on brief.[1]

_____

Before:  BRAND, JURY and FARIS, Bankruptcy Judges.

_____

[1]  Appellee Rana Kirresh did not appear in this appeal.

BRAND, Bankruptcy Judge:

Chapter 7[2] debtor Cecil Gill appeals an order denying his motion to compel the chapter 7 trustee to abandon the estate's interest in Debtor's residence ("Residence"), which was subject to a tax lien by the Internal Revenue Service ("IRS"). A portion of the IRS's lien included penalties assessed for Debtor's failure to pay income taxes. The bankruptcy court determined that, because the chapter 7 trustee could avoid and preserve the penalty portion of the lien for the benefit of unsecured creditors, "substantial value" existed in the Residence precluding abandonment.

Whether the chapter 7 trustee could avoid and preserve the penalty portion of the IRS's tax lien against the Residence is an issue of first impression before the Panel. We conclude that he could, and we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2009, Debtor purchased his Residence in the Murray Hill area of Beaverton, Oregon for $310,000. Rana Kirresh holds the promissory note secured by the Residence. Debtor defaulted on the note in or around May 2015.

Debtor converted his chapter 13 bankruptcy case to chapter 7 on April 18, 2016. Stephen Arnot was appointed as the chapter 7 trustee. Debtor received a discharge on July 26, 2016.

In his schedules, Debtor valued the Residence at $500,000 and claimed a total of $128,034.78 in unsecured nonpriority debt,

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

including $80,000 in student loans. Thus, approximately $48,000 of Debtor's unsecured nonpriority debt was subject to discharge.

Prior to the conversion of Debtor's case, Kirresh filed a $368,558.57 secured proof of claim, which included several years of delinquent property taxes. The IRS filed an amended proof of claim for $211,586.87, of which $161,530 was a secured claim that included $48,276.33 in tax penalties. The IRS's secured tax lien against the Residence was filed in 2015 and covered tax assessments made during the years 2009 through 2013 for unpaid income taxes from years 2005 through 2011.

**A.  Motion for relief from stay**

Kirresh later moved for relief from stay to proceed with foreclosure on the Residence. By this time, the total debt owed to her was approximately $371,000. Kirresh alleged that, between her lien and the IRS lien, the Residence was underwater and there was no equity for Debtor.

Debtor opposed the stay relief motion, contending that Kirresh's lien was adequately protected because the Residence was "valued higher than the amount claimed by Creditor ($500,000)" and "continue[d] to increase." Debtor disputed Kirresh's assertion that no equity existed in the collateral beyond the delinquent property tax, Kirresh's lien and the IRS lien.

Kirresh and Trustee ultimately entered into a stipulated order on the stay relief motion allowing Trustee six months to sell the Residence. The court approved Trustee's application to employ Steve Kaer, an Oregon licensed broker and realtor, to sell the Residence. Kaer intended to list the property for $539,000; Kaer's commission on any sale would be 6%.

**B. Debtor's motion to compel Trustee's abandonment of the Residence**

Debtor then moved to compel Trustee to abandon the estate's interest in the Residence ("Motion to Abandon"). Debtor again valued the Residence at $500,000 and argued that, because the amount of debt against it was in excess of $650,000 (including liens, Debtor's claimed $40,000 homestead exemption and proposed administrative fees), it was burdensome or of inconsequential value and benefit to the estate and should be abandoned.

Trustee opposed the Motion to Abandon, contending that abandonment of the Residence was inappropriate because unsecured creditors stood to receive approximately $48,000. As Trustee explained, he intended to sell the Residence for at least $500,000 free and clear of the IRS's tax lien under § 363(f) and pay off the $371,000 first lien, with the IRS lien attaching only to the remaining sale proceeds to the extent available. Pursuant to §§ 724(a), 726(a)(4) and 551, he could then avoid, subordinate and preserve the penalty portion of the IRS tax lien ($48,276.33) against the remaining sale proceeds and distribute those funds to unsecured creditors.

As for Debtor's claimed homestead exemption, Trustee argued that it was subject to the IRS's lien to the full extent of the Residence and was not exempt to the extent of the lien. Thus, unless the lien was satisfied, no proceeds were available for Debtor's homestead exemption.

In response, Debtor stated that his $500,000 valuation of the Residence was based on his analysis of the history of similar properties sold in the surrounding areas and was the value he

-4-

hoped to realize after the completion of deferred maintenance.

Before the evidentiary hearing on the Motion to Abandon, Debtor and Trustee submitted various exhibits. Trustee included a list of comparable properties that were for sale or had sold in the past 12 months. The comparable list was supported by a declaration from Kaer. Kaer opined that, based on his review of the comparable properties, the Residence's value was $539,000, taking into consideration its current condition, including the need for a new roof and siding. Debtor submitted his declaration along with a property report from Classic Realty Group ("Classic Report") and a recent bid for replacement of the Residence's roof, siding and gutters. The Classic Report provided a "Current Estimated Value" of the Residence of $516,720 and a "Comp Analysis Value" of $434,039. The bid for replacement of the roof, siding and gutters was $74,991.

**1.    Evidentiary hearing on the Motion to Abandon**

Kaer was the only witness to testify at the evidentiary hearing. Kaer testified that he began selling homes in the Murray Hill area shortly after its development in 1968; however, he had not personally sold any homes in that area in the past 12 months.

Kaer explained how he determined his $539,000 valuation for the Residence and the factors involved when creating a list of comparables. Kaer stated that his valuation considered roof repairs, but he did not factor in replacement of the siding because he believed that a good coat of paint would repair it. Kaer further explained that after a physical inspection of the Residence, he believed it also needed interior painting and carpet cleaning.

-5-

Overall, Kaer thought the Classic Report offered by Debtor was a fine report, but he questioned its accuracy because it did not use comparables exclusively from the Murray Hill area; only three of the seven homes listed were located in Murray Hill. On cross-examination, Kaer conceded he was not entirely sure what parameters were used to compile his list of comparables because his staff had put it together. He further conceded that, just like the Classic Report, at least some of the comps used were not located in Murray Hill.

In closing argument, Trustee explained the sale process for the Residence and what the estate could expect to receive from the proceeds based on a hypothetical sale price of $500,000. Although no one from the IRS testified, Trustee made an offer of proof that the IRS had consented to the sale free and clear of its lien and would file an amended proof of claim once the amount of sale proceeds were determined, which would then adjust the secured portion of the tax and penalties due from the estate.[3]

The bankruptcy court rejected Debtor's declaratory testimony that his $500,000 valuation was based on a repaired home. The court opined that for valuing real property one generally takes the value for a pristine house and discounts it down for the cost of necessary repairs. When Debtor expressed his concern that no one had discussed the Classic Report during the hearing, the court responded that was because no one from Classic came to testify and be cross-examined. Without any testimony from a Classic witness,

---

[3] Once the secured IRS claim matched the proceeds on hand, any equity freed up by avoiding the penalties associated with the tax lien would be available for distribution to the estate and would not be consumed by the lien for other non-penalty taxes.

-6-

it was not clear what factors went into the Classic Report's figures.

### 2. The court's ruling on the Motion to Abandon

The bankruptcy court announced its ruling on the Motion to Abandon from the bench, stating its findings and conclusions. After considering the three valuations offered into evidence, the court found the Residence's value to be $500,000 as stated by Debtor. Based on that value, the court concluded that Trustee's sale of the Residence would benefit the estate. Accordingly, the Motion to Abandon was denied. Debtor timely appealed the subsequent order.[4]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in determining the value of the Residence?

2. Could Trustee avoid and preserve the penalty portion of the IRS's tax lien for the benefit of the estate?

## IV. STANDARDS OF REVIEW

The bankruptcy court's decision to authorize or deny abandonment is reviewed for an abuse of discretion. Viet Vu v. Kendall (In re Viet Vu), 245 B.R. 644, 647 (9th Cir. BAP 2000). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or

---

[4] In conjunction with the order denying the Motion to Abandon, the court entered an order compelling Debtor to turn over the Residence to Trustee. Debtor's appeal of the turnover order (16-1289) was ultimately dismissed for his failure to prosecute.

without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

A bankruptcy court's valuation of property is a finding of fact reviewed under the clearly erroneous standard. Arnold & Baker Farms v. United States (In re Arnold & Baker Farms), 85 F.3d 1415, 1421 (9th Cir. 1996). A finding is clearly erroneous if it is "illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

The bankruptcy court's interpretation of the Bankruptcy Code is a question of law we review de novo. Bendetti v. Gunness (In re Gunness), 505 B.R. 1, 4 (9th Cir. BAP 2014).

## V. DISCUSSION

### A. Abandonment under § 554(b)

Section 554(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The moving party has the burden of establishing that the property at issue is burdensome or of inconsequential value and benefit to the estate. In re Viet Vu, 245 B.R. at 647.

An order to compel abandonment is "the exception, not the rule." Id. (citing Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.), 816 F.2d 238, 246 (6th Cir. 1987)). Compelled abandonment under § 554(b) is generally reserved for instances where a trustee is merely churning property worthless to the estate just to increase fees. Id.

///

///

-8-

**B.    The bankruptcy court did not abuse its discretion in denying the Motion to Abandon.**

At the heart of the Motion to Abandon was the bankruptcy court's valuation of the Residence and whether Trustee could avoid and preserve the tax penalties for the benefit of the estate. Debtor contends that the bankruptcy court erred on both of these issues.

    **1.    The bankruptcy court did not clearly err in determining the value of the Residence.**

First, Debtor takes issue with the court's factual finding of value. The court considered three types of evidence in relation to valuation:  (1) the Kaer comparable analysis; (2) the Classic Report; and (3) Debtor's valuation of the Residence on his Schedule A.  Debtor contends the court should not have afforded **any** weight to Kaer's analysis because:  (1) he first declared that the siding needed to be replaced, but later testified that it only needed to be painted; (2) he did not prepare his comparables list and could not describe what parameters were used to determine the comparables; (3) his comparables list included properties not located in Murray Hill; (4) he had not sold a home in Murray Hill in the past 12 months; and (5) he lacked knowledge about the Residence and the Murray Hill area.

Given the court's valuation ruling, Debtor's argument makes little sense.  It rejected Kaer's $539,000 valuation for the Residence, finding that it was "a little high" because it did not

-9-

give adequate market effect to the siding issues.[5]

After considering the evidence, the court agreed with Debtor's $500,000 valuation of the Residence:

> In any event, based on all the — of the factors, I'm prepared to find the value of the property at the value stated by Mr. Gill in his schedules at half a million dollars. He's the one who lives there, has an idea as to the condition of the property. And when he filed his case, I assume he did his best to provide the appropriate value, and that's the value he gave it. So that's the value I would apply . . . to the property at the present time.

Hr'g Tr. (Sept. 7, 2016) 5:24-6:7. The court further determined that Debtor's $500,000 valuation took into consideration the possible cost of repairs.

Debtor contends that the court erred in using his valuation for the Residence; he is not a valuation expert and he had continuously represented to the court that his $500,000 valuation did not include the necessary repairs to the roof, siding and gutters, which totaled approximately $75,000. Debtor contends the logical approach would have been to deduct the cost of the repairs, which would have provided a value for the Residence of $425,000. In that case, Debtor contends that the approximate $25,000 balance left in sale proceeds (after paying broker fees and Kirresh) was of no value to the estate.

The court twice rejected Debtor's testimony that his $500,000 valuation did not include any cost of repairs. As the court explained, to ascertain a value for real property, one generally considers the value of a pristine home and discounts it down for

---

[5] The court also gave little weight to the Classic Report's values of $516,720 and $434,039, because no broker testified as to what factors went into the report or explained the difference in the two values. Debtor does not contest this.

-10-

necessary repairs. This approach is not an illogical one.

We further note that at a time when it suited Debtor's purpose to place a higher value on the Residence, such as in opposition to Kirresh's stay relief motion, Debtor claimed that Kirresh's $500,000 valuation of the Residence (which she likely obtained from Debtor's schedules) was too low, that the Residence's value was continuing to increase, and that equity likely existed in the Residence beyond the delinquent property tax, Kirresh's lien and the IRS lien.

In light of the record, we conclude that the bankruptcy court's rejection of Debtor's testimony that his $500,000 valuation was based on a repaired home was not clearly erroneous. We further conclude that its $500,000 valuation for the Residence was not illogical, implausible or without support in the record.

### 2. Trustee could avoid and preserve the penalty portion of the IRS's tax lien for the benefit of the estate.

The bankruptcy court did not make explicit findings regarding Trustee's ability to avoid, subordinate and preserve the possible $48,276.33 in tax penalties for the estate under §§ 724(a), 726(a)(4) and 551. Yet, by finding that at a value of $500,000 there was "substantial value" for the estate's unsecured creditors with Trustee's sale of the Residence free and clear of the IRS's lien under § 363(f), it implicitly determined that Trustee could do as he intended based on those statutes. If the court had not determined so, then Debtor's claimed homestead exemption would have exhausted the remaining equity after paying Kirresh, leaving nothing for unsecured creditors and making abandonment appropriate.

-11-

Surprisingly, there is a dearth of case law on this precise issue. However, we conclude that the Code expressly authorized Trustee to avoid, subordinate and preserve the penalty portion of the IRS's tax lien for the benefit of the estate's unsecured creditors.

Under § 724(a), the chapter 7 trustee may avoid a lien that secures a claim of a kind specified in § 726(a)(4). Section 726(a)(4) subordinates any allowed claim, "whether secured or unsecured, for any . . . penalty . . . arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such . . . penalty . . . [is] not compensation for actual pecuniary loss suffered by the holder of such claim." Taken together, §§ 724(a) and 726(a)(4) allow a chapter 7 trustee (but not the debtor or a third party) to avoid a lien to the extent the lien secures the claim for a penalty, including a tax penalty. Holloway v. Internal Revenue Serv. (In re Odom Antennas, Inc.), 340 F.3d 705, 708 (8th Cir. 2003); In re Bolden, 327 B.R. 657, 664 (Bankr. C.D. Cal. 2005) (denying debtor's motion to compel abandonment of estate property because the avoided tax penalties could be preserved for the benefit of the estate and a distribution paid to unsecured creditors).[6]

Further, § 551[7] accords the chapter 7 trustee the statutory

_____

[6] It is undisputed that the tax penalties here were assessed against Debtor before the order for relief as a penalty and not as compensation for actual pecuniary loss. The penalties were punitive in nature and assessed to punish Debtor's failure to pay income taxes.

[7] Section 551 provides that any transfer avoided under section 724(a) is preserved for the benefit of the estate but only
(continued...)

-12-

right to preserve any liens avoided under § 724(a) for the benefit of the estate.  In re Bolden, 327 B.R. at 664; 4 Norton Bankr. Law & Practice 3d § 83:2 (2017) (Sections 724(a), 726(a)(4) and 551 authorize chapter 7 trustee to avoid liens on property securing debts imposed upon the debtor for punitive purposes, thereby effecting the release of additional funds to satisfy obligations to unsecured creditors); 5 Collier on Bankruptcy ¶ 551.01 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015).

The purpose of § 724(a) is to protect unsecured creditors from the debtor's wrongdoing.  In re Bolden, 327 B.R. at 664; Rice v. Internal Revenue Serv. (In re Odom Antennas, Inc.), 258 B.R. 376, 384 (Bankr. E.D. Ark. 2001), aff'd, 340 F.3d 705 (8th Cir. 2003).  Enforcement of penalties against a debtor's estate serves not to punish the delinquent taxpayers, but rather their entirely innocent creditors.  Innocent creditors should not be punished for the actions of delinquent debtor taxpayers.  Simonson v. Granquist, 369 U.S. 38, 41 (1962); In re Bolden, 327 B.R. at 664. "By avoiding the penalty portions of the tax liens and preserving them for the benefit of the creditors, the estate is enriched while the IRS still obtains the principal portion of its liens, with interest, in the order and priority of each respective lien." In re Bolden, 327 B.R. at 665.

Debtor cites no authority contrary to Holloway and Bolden and asserts only two arguments.  He first contends that Trustee offered no evidence of an agreement with the IRS for the sale of

[7](...continued)
with respect to property of the estate.

-13-

the Residence free and clear of its lien and allowing him to subordinate the penalty portion of the lien. No one from the IRS testified at the evidentiary hearing about whether it consented to the sale free and clear, but Trustee did make an offer of proof that he had the IRS's consent and that the IRS would file an amended proof of claim once the amount of sale proceeds were determined, which would then adjust the secured portion of the tax and penalties due from the estate. Moreover, according to Trustee, such sales are commonplace.

As for subordination of the penalty portion of the tax lien, it is clear by operation of §§ 724(a) and 726(a)(4) that a penalty which is secured by a tax lien is automatically demoted in a chapter 7 case from the highest priority to the lowest priority, payable only after general unsecured creditors are paid in full. Thus, the Code compels subordination of such penalties; no consent from the IRS is necessary.

Next, Debtor attempts to distinguish Bolden, arguing in that case the IRS had eight secured tax liens against the debtor's residence as opposed to one. 327 B.R. at 659. This is a distinction without a difference. As Trustee counters, assuming he can sell the Residence for at least $500,000, which appeared plausible at the time the bankruptcy court made its decision, the estate stands to receive up to $48,000 from the avoided and preserved penalties. This would be true whether the IRS has one lien or eight liens totaling the same amount.

Not including Debtor's student loans, his scheduled unsecured nonpriority debt totaled approximately $48,000. With a sale of the Residence at $500,000 and Trustee's ability to avoid,

-14-

subordinate and preserve the penalty portions of the IRS's tax lien (and interest thereon), unsecured creditors stand to receive up to $48,000 from the sale, minus Trustee's fees and other administrative expenses. The Residence was not burdensome or of inconsequential value and benefit to the estate, as required by § 554(b). It was, as the bankruptcy court found, of "substantial value" to the estate. Accordingly, we conclude that the bankruptcy court did not abuse its discretion in denying the Motion to Abandon.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.