**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re:  MICHAEL A. LEITE;
ANDREA C. CARVALHO,

*Debtors*.

_____

UNITED STATES OF AMERICA,

*Appellant*,

v.

ROBERT A. MACKENZIE, Trustee,

*Appellee*.

No. 23-15825

D.C. No. 2:22-cv-
00461-DWL

OPINION

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted May 17, 2024
Phoenix, Arizona

Filed September 3, 2024

Before:  Susan P. Graber, Roopali H. Desai, and Ana de
Alba, Circuit Judges.

Opinion by Judge de Alba

# SUMMARY[*]

## Bankruptcy

The panel reversed a district court order affirming the bankruptcy court's allocation of proceeds of the sale of real property in a Chapter 7 bankruptcy, and remanded with instructions to further remand to the bankruptcy court to determine the final allocation amounts.

The specific issue before the panel was the proper allocation method of sale proceeds where the IRS holds a valid tax lien that includes both unpaid taxes and related penalties, and where the Bankruptcy Trustee avoids the penalty portion under 11 U.S.C. § 724(a) but the sale proceeds are insufficient to pay both the tax and the penalty portions of the lien.

The bankruptcy court allocated the proceeds on a pro rata basis between the IRS and the Bankruptcy Estate.

The panel held that the pro rata method is inconsistent with the Bankruptcy Code. The district court erroneously held that the bankruptcy court had authority to adopt and apply the pro rata method under its general powers of 11 U.S.C. § 105(a). Section 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code or otherwise take action that the Code prohibits. The pro rata method violates the express limitations of § 724(a) and the automatic preservation provision, 11 U.S.C. § 551; reduces the value

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the unavoidable tax portion of the lien; and disturbs the Code's order of priorities without justification. No provision of the Bankruptcy Code requires or guarantees that the Estate ultimately receive payment for the avoided penalty portion of a tax lien when the property is over-encumbered.

The panel remanded to the district court to require the bankruptcy court to determine the final allocation under a tax-first method in which the sale proceeds pay the unavoidable tax portion of the lien first before paying the Estate for the avoided penalty portion.

## COUNSEL

Matthew S. Johnshoy (argued) and Bruce R. Ellisen, Attorneys, Tax Division, Appellate Section; David A. Hubbert, Deputy Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Appellant.

Terry A. Dake (argued), Terry A. Dake Ltd, Phoenix, Arizona, for Appellee.

## OPINION

DE ALBA, Circuit Judge:

As Benjamin Franklin said, "nothing is certain except death and taxes." But how certain are taxes in a Chapter 7 bankruptcy? We address that question here, and we conclude that Mr. Franklin's maxim withstands both time and the Bankruptcy Code (Code).

## I.     Introduction

The Internal Revenue Service (IRS) appeals a judgment of the district court of Arizona that affirmed the bankruptcy court's allocation of proceeds of the sale of real property on a pro rata basis between the IRS and the Bankruptcy Estate (Estate) in a Chapter 7 bankruptcy. Specifically, the issue before us is the proper allocation method of sale proceeds where the IRS holds a valid tax lien that includes both unpaid taxes and related penalties, and where the Bankruptcy Trustee (Trustee) avoids the penalty portion under 11 U.S.C. § 724(a), but the sale proceeds are insufficient to pay both the tax and the penalty portions of the lien. There is no binding legal authority or Code provision that expressly provides an allocation method in these circumstances.

We have jurisdiction under 28 U.S.C. § 158(d)(1). After careful review and consideration of the record and the decisions below, the relevant Code provisions and existing case law, and the parties' briefing and oral argument, we hold that the pro rata method is inconsistent with the Bankruptcy Code. The district court thus erred in using that method. We therefore reverse and remand this case to the district court to require the bankruptcy court to determine the final allocation amounts under a tax-first method.

## II. Factual and Procedural Background

In 2013, the IRS recorded a federal tax lien against Michael Leite and Andrea Carvalho's (Debtors) real property, located in Connecticut, for unpaid taxes from fiscal year 2009. Debtors filed for Chapter 7 bankruptcy in September 2019. The IRS filed a proof of claim for a total amount of $81,174.13, itemized as follows:

- $26,900.19 in taxes due, plus $19,038.80 in interest on the taxes, for a total of $45,938.99 (the "tax portion").

- $35,235.14 in penalties (the "penalty portion"), which was later reduced by an offset,[1] bringing the final amount of the penalty portion to $24,991.14.

In April 2020, the Trustee sold the property and netted $38,640.80 available to pay the tax lien. There were no junior lienholders with claims to the proceeds.

On May 8, 2020, the Trustee initiated adversary proceedings to avoid the penalty portion of the tax lien. On June 18, 2020, the Trustee moved for summary judgment on the issue of avoidance and argued that the proceeds from the sale should be allocated pro rata between the IRS and the Estate. The IRS did not dispute that the Trustee could avoid the penalty portion of the lien, but it argued that the proceeds should first pay the tax portion of the lien.

Ruling from the bench, the bankruptcy court noted that there was no case law supporting either approach. It

---

[1] The district court upheld the IRS's application of a $10,244.00 offset, which arose during litigation, to the penalty portion. The Trustee does not challenge the offset on appeal.

concluded that the pro rata method "makes the most sense" because, in its view, the IRS and the Estate share the same lien priority position following avoidance under § 724 and the automatic preservation provision, § 551. On September 27, 2021, the district court affirmed, ruling the bankruptcy court had authority to apply the pro rata method under its equitable powers set forth in § 105(a). The court held that "[a]llocating proceeds in a manner other than pro rata" would disrupt the purpose of § 551 because it would "subrogate" the Estate's lien for the penalty portion to the IRS's lien for taxes. The district court determined that the "pro rata allocation is not *in*consistent with § 551 and furthers the purposes of that provision." It also acknowledged that there was no statutory basis for the pro rata method, but nonetheless held that the pro rata method is proper because it is "not verboten" under the Code.[2]

## III.    Standard of Review

"We review de novo a district court's decision on appeal from a bankruptcy court." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). "We apply the same standard of review applied by the district court" when reviewing the bankruptcy court decision, and thus we review "findings of fact . . . for clear error, while . . . conclusions of law are reviewed de novo." *Id.* (citing *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004)). Statutory interpretation issues are legal conclusions that we review de novo. *See In re Blixseth*, 684 F.3d 865, 869 (9th Cir. 2012) (per curiam).

---

[2] There were further proceedings before the bankruptcy and district courts regarding other issues, none of which are relevant to this appeal.

## IV.    Relevant Statutory and Legal Framework

### A. Statutory Provisions

This case involves the interplay among, and the application of, several Code provisions in a Chapter 7 bankruptcy, so a brief review of the applicable law is appropriate.

To begin, as the courts below noted, no Code provision expressly delineates who and how much is paid following partial avoidance of a tax lien under § 724(a) when there are insufficient funds to pay the lien. Courts are reluctant to interpret the Code, "however vague the particular language under consideration might be, to effect a major change in pre-Code practice" that Congress did not at least discuss. *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992). We also presume "that Congress did not intend to change preexisting bankruptcy law or practice" without a "clear indication[] to the contrary." *Pac. Gas & Elec. Co. v. California ex rel. Cal. Dep't of Toxic Substances Control*, 350 F.3d 932, 943 (9th Cir. 2003). Of course, if the statutory text is clear and unambiguous, we presume that Congress "says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

Section 724(a) is one express change from "pre-Code" practice. Before 1978, the Bankruptcy Act of 1898 barred all claims for penalties that were non-compensatory in nature. *See Simonson v. Granquist*, 369 U.S. 38, 40–41 (1962) (citing the prior statute that stated "[d]ebts owing to the United States . . . as a penalty or forfeiture shall not be allowed" except as to any pecuniary losses arising from the penalty). But under § 724(a) of the current Code, penalties are avoidable rather than void per se. Section 724(a) provides that "[t]he trustee may avoid a lien that secures a

claim of a kind specified in section 726(a)(4) of this title." Section 726(a)(4) lists the "kind" of claims, specifically "any fine, penalty, forfeiture, or for multiple, exemplary, or punitive damages . . . to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim."

Congress explained that a lien for penalties is "voidable rather than void in Chapter 7, in order to permit the lien be revived if the case is converted to Chapter 11, under which penalty liens are not voidable." S. Rep. No. 95-989, at 96 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5882; H.R. Rep. 95-595, at 382 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6338. The purpose of § 724(a) is to "protect [] unsecured creditors from the debtor's wrongdoing," which is consistent with pre-Code policy. *In re DeMarah*, 62 F.3d 1248, 1252 (9th Cir. 1995) (quoting S. Rep. 95-989, at 96) (brackets in original); *see also In re Gill*, 574 B.R. 709, 716 (B.A.P. 9th Cir. 2017) (same); *In re Bolden*, 327 B.R. 657, 664 (Bankr. C.D. Cal. 2005); H.R. Rep. 95-595, at 382.

In addition to describing the "kind" of claim that is avoidable under § 724(a), § 726(a) also establishes the general order for distributing property of the Estate. Section 726(a)(4) places the "payment of any allowed claim, whether secured or unsecured," for fines, penalties, and the like as "fourth" in line behind payments for other claims and expenses. First in line under Section 726(a)(1) are payments for claims "of the kind specified in, and in the order specified in, section 507 of this title." Relevant here, § 507 places payments for "administrative expenses"—which includes taxes and related tax penalties allowed under § 503(b)— second in priority. 11 U.S.C. § 507(a)(2); *see Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 457 (2017) (explaining

that "secured creditors" are the highest priority under § 507 and "[s]pecial classes of creditors, such as those who hold certain claims for taxes or wages, come next in a listed order"). Next come "low-priority creditors, including general unsecured creditors." *Id.* As the Supreme Court stated, the Code "makes clear that distributions of assets in a Chapter 7 liquidation must follow this prescribed order." *Id.* There must be "some affirmative indication" of congressional intent to depart from this priority system. *Id.* at 465.

Section 551 works in tandem with avoidance under § 724(a). Section 551 provides that a transfer avoided under seven specific statutes, including § 724(a), "is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551. In other words, penalties that a Trustee avoids under § 724(a) are automatically preserved for the Estate. This is another express change from pre-Code practice when a court had to determine whether an avoided transfer would be preserved. *See In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990) (citing § 551 and S. Rep. No. 95-989). The statute "prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided." *Id.* (quoting S. Rep. 95-989, at 91). Upon avoidance, § 551 automatically places the Trustee "into the shoes of the lienholder, preserving for the estate the respective priority of each lien." *Bolden*, 327 B.R. at 665; *see also Van de Kamp's*, 908 F.2d at 519 ("[A] trustee who avoids an interest succeeds to the priority that interest enjoyed over competing interests."). Congress recognized that automatic preservation "may not benefit the estate in every instance." H.R. Rep. 95-595, at 376; S. Rep. 95-989, at 91. If "preservation does not benefit the estate," then the

"preserved lien may be abandoned" under § 554. H.R. Rep. 95-595, at 376; S. Rep. 95-989, at 91.

## B. *Hutchinson II* [3]

Roughly six months after the district court's September 2021 ruling in this case, the Bankruptcy Court for the Eastern District of California confronted the same allocation issue, but reached the opposite conclusion. *See In re Hutchinson*, No. 17-12272-A-7, 2022 WL 1021843, at \*4 (Bankr. E.D. Cal. Apr. 1, 2022) (*Hutchinson II*). The IRS held multiple tax liens on the debtors' real property, the most senior of which included penalties that the Trustee avoided pursuant to § 724(a). *Id.* at \*3. That particular lien included a tax portion of $87,157.73 and a penalty portion of $132,099.54. *Id.* There were $92,652.71 available from the sale of the property to pay the most senior tax lien. *Id.* The bankruptcy court held that "the United States should be paid with respect to the tax and interest on tax portions of its tax lien before Trustee is paid on the avoided penalty portion of the same tax lien." *Id.* at \*4. It reasoned that § 724(a) allows the Trustee to avoid "only the same portion of a tax lien that is also subordinated in § 726(a)(4), and not any other portion of a tax lien." *Id.* Accordingly, it concluded that the tax and penalty portions are not "on par" with each other under the Code, and a tax-first allocation method correctly "subordinated" the penalty portion of the lien to the tax

---

[3] The IRS appealed an earlier order in the *Hutchinson* case regarding a motion to abandon certain property, but subsequently filed an unopposed motion to dismiss that appeal as moot, which we granted. *See In re Hutchinson*, 615 B.R. 596 (E.D. Cal. 2020), *dismissed as moot and vacated by United States v. Hutchinson*, No. 20-16331, 2020 WL 5551702, at \*1 (9th Cir. Sep. 15, 2020). The relevant allocation issue arose after another subsequent appeal.

portion consistent with the text of §§ 724(a) and 726(a)(4). *Id.* (citing *Gill*, 574 B.R. at 716 and *Bolden*, 327 B.R. at 665).

## V.    Discussion

The IRS argues that the pro rata method violates the Bankruptcy Code.  It asserts that a "tax-first" method—in which the sale proceeds pay the unavoidable tax portion of the lien first before paying the Estate for the avoided penalty portion—is the correct method.  The Trustee adopts the district court's decision to support the pro rata method.

The district court erroneously held that the bankruptcy court had authority to adopt and apply the pro rata method under its general powers of § 105(a).  Section 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code" or otherwise "tak[e] action that the Code prohibits."  *Law v. Siegel*, 571 U.S. 415, 421 (2014) (citations omitted).  The bankruptcy court's application of the pro rata method does just that.

## A.  Problems With the Pro Rata Method

We have acknowledged that § 724(a) allows partial avoidance of a tax lien—that is, the statute allows a Trustee to avoid the penalty portion of a single tax lien.  *See DeMarah*, 62 F.3d at 1252 (noting, but not deciding, that a trustee could "avoid the penalty portion of tax liens on nonexempt property"); *In re Hutchinson*, 15 F.4th 1229, 1233–34 (9th Cir. 2021) (*Hutchinson I*) (acknowledging same).  The text of § 724(a) expressly limits what the Trustee can avoid with respect to liens that secure the "kind" of claims specified in § 726(a)(4).  Section 726(a)(4) lists non-compensatory penalties, punitive damages, and the like as the "kind" of claims that are avoidable under § 724(a).  Items a statute lists that are "members of an associated group or

series justify the inference that items not mentioned were excluded by deliberate choice." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)) (cleaned up).   Thus, the compensatory tax portions of tax liens are unavoidable, and the Trustee's ability to avoid IRS tax liens under § 724(a) is limited to the non-compensatory penalty portions only.  *See id.*; *see also Gill*, 574 B.R. at 716 (noting §§ 724(a) and 726(a)(4) "allow a chapter 7 trustee . . . to avoid a lien to the extent the lien secures the claim for a penalty, including a tax penalty").

This conclusion appears undisputed.   The bankruptcy court and the district court correctly understood that the Trustee avoided the lien only "to the extent of the penalties and the interest on the penalties."   Indeed, the Trustee concedes that "only the penalty portion is . . . 'recoverable' by the estate."

Section 551 preservation is also limited in scope. Relevant here, it preserves only what § 724(a) avoids, which is limited to non-compensatory penalties.   Therefore, a Trustee who avoids the penalty portion of a tax lien under § 724(a) preserves only the original lien's priority position and the value of the penalty portion.

The pro rata method is inconsistent with the Code's text in three significant ways.   First, it increases the amount that the Trustee avoids and preserves beyond what the text of §§ 724(a) and 551 allow.   In this case, the value of the entire tax lien was $70,930.13.   The tax portion of the lien was $45,938.99, or approximately 65% of the lien, and the total value of the penalty portion was $24,991.14, about 35% of the lien.   The available proceeds totaled $38,642.80. Applying the pro rata method provides the IRS with 65% of

the $38,642.80 sale proceeds, or $25,117.82, which is approximately 55% of the value of the unavoidable tax portion of the lien. Thus, not only does this method diminish the value of the unavoidable tax portion of the lien, but it also avoids and preserves part of the unavoidable tax portion of the lien for the Estate.

Second, nothing in the Code justifies reducing the value of the unavoidable tax lien in the circumstances presented in this case. The district court noted that the pro rata method was "not *in*consistent with § 551 and furthers the purposes of that provision." Section 551, however, does not work in isolation—it must be read in conjunction with § 724(a) and its express limitations. As noted earlier, the purpose of § 724(a) is to "protect [] unsecured creditors from the debtor's wrongdoing," *DeMarah*, 62 F.3d at 1252, but nothing suggests that Congress intended avoidable penalties to diminish the value of unavoidable tax portions of a tax lien, or that §§ 724(a) and 551 guarantee payments to unsecured creditors at the expense of the unavoidable tax portion.

Third, the pro rata method is at odds with priorities established in the Code. Sections 507, 725, and 726 establish that "[s]ecured creditors are highest on the priority list," while "general unsecured creditors" are lower. *Czyzewski*, 580 U.S. at 457. Generally, claims arising from liens are secured to the extent of the value of the collateral, and the remainder is considered unsecured. *See* 11 U.S.C. § 506(a). This principle remains true when the property has only enough value to secure part of a single IRS lien, leaving the remainder of that lien unsecured. Because §§ 507 and 726(a) demonstrate that the Code prioritizes taxes over penalties, and given the Code's longstanding contempt for penalties, it follows that the secured portion of an IRS lien

should go to the tax portion before the penalty portion. *See Gill*, 574 B.R. at 717 ("the Code compels subordination of [tax] penalties"); *accord United States v. Specialty Cartage, Inc.*, 113 B.R. 484, 485 (N.D. Ind. 1990) ("[T]here would come a point where one lien itself would only be partially secured, . . . [and] apportionment of that lien amount should reflect the traditional hostility to penalty claims and the secured portion should first be allocated to the tax and interest and then to any penalties.")

But here, the pro rata method reduced the amount that the IRS receives for its secured, unavoidable tax portion of the lien to pay other unsecured creditors, who are lower in priority and had no rights to the IRS lien at all. In so doing, this method placed the unavoidable tax portion of the lien at a lower priority than the Code suggests is appropriate. Re-prioritizing the taxes and lower priority bankruptcy creditors in this manner constitutes error. *See Czyzewski*, 580 U.S. at 464–65.

By contrast, a tax-first method is consistent with the Code. In the circumstances presented here, where the amount of the tax lien exceeds the value of the property, the tax portion is secured up to the property's value under § 506 and receives the appropriate priority under § 507. A tax-first method does not affect the Trustee's ability to invoke § 724(a) avoidance and to preserve automatically any avoided penalties under § 551, which may be reasonable and consistent with the Trustee's duty to maximize the Estate's assets in a particular case. Indeed, several cases recognize that avoidance may provide value to the Estate even when it is over-encumbered. *See, e.g.*, *IRS v. Baldiga* (*In re Hannon*), 619 B.R. 524, 535 (D. Mass. 2020) (affirming compensation to Trustee for avoidance of tax penalties on over-encumbered property because of the "reasonable

likelihood" that it would enable payment to unsecured creditors); *Bolden*, 327 B.R. at 664-65 (finding avoidance would "enrich" the estate while paying the IRS the "principal portion of its liens" even though other tax liens would exhaust the property). If any funds are available after paying the secured, unavoidable tax portion of the lien, the avoided penalty portion can be paid to unsecured creditors in accordance with § 726.

To summarize, the pro rata method violates the express limitations of §§ 724(a) and 551, reduces the value of the unavoidable tax portion of the lien, and disturbs the Code's order of priorities without justification. Its adoption was erroneous and an improper use of the bankruptcy court's authority under § 105(a).

## B.  The Code's Prioritization of Taxes Over Penalties

The pro rata method and the Trustee's argument share the same flawed premise: once a Trustee avoids the penalty portion of a tax lien under § 724(a), the Trustee and the IRS become equal claimants with equal rights to the entire tax lien. Not so.

The Code does in fact treat liens and claims for taxes differently than those for penalties. Several courts have recognized that both the prior and current Code disfavor recovery for penalties in bankruptcy. *See, e.g.*, *Hannon*, 619 B.R. at 534 (finding that §§ 551, 724(a), and 726 "make clear" that payments for penalties are disfavored); *Gill*, 574 B.R. at 716 ("Enforcement of penalties against a debtor's estate serves not to punish delinquent taxpayers, but rather their entirely innocent creditors."); *Bolden*, 327 B.R. at 664 (stating § 724(a) maintained the pre-Code "congressional purpose to bar all claims of any kind against a bankrupt

except those based on a 'pecuniary loss'") (quoting *Simonson*, 369 U.S. at 40).

Courts have also recognized that the Code prioritizes the tax portion over the penalty portion. In *Gill*, the Bankruptcy Appellate Panel examined §§ 724 and 726(a) together in affirming the Trustee's ability to preserve the penalty portion of an IRS tax lien. *Gill*, 574 B.R. at 715–16. The panel held that "it is clear by operation of §§ 724(a) and 726(a)(4) that a penalty which is secured by a tax lien is automatically demoted in a chapter 7 case from the highest priority to the lowest priority, payable only after general unsecured creditors are paid in full. Thus, the Code compels subordination of such penalties." *Id.* at 717.

Similarly, in *Hutchinson II*, the bankruptcy court held that the IRS should be paid for the tax portion first because that order is consistent with § 724(a) and "avoids only the same portion of a tax lien that is also subordinated under § 726(a)(4)," meaning that the two portions of a tax lien are not "on par" with each other. *Hutchinson II*, 2022 WL 1021843, at \*4; *see also Specialty Cartage*, 113 B.R. at 485, 487 (affirming the Bankruptcy Court's apportioning of five different IRS tax liens and its recognition that the apportionment "should reflect the traditional hostility to penalty claims and the secured portion should first be allocated to the tax and interest and then to any penalties"); *In re Seneca Balance, Inc.*, 114 B.R. 378, 379 (Bankr. W.D.N.Y. 1990) (holding that "[o]nly if the value is adequate to cover the entire lien, should the interest and the penalty be secured"). Neither *Specialty Cartage* nor *Seneca Balance* involved partial avoidance of the tax lien. They do, however, understand what the Code makes clear—claims for the tax portions of IRS liens receive a higher priority than claims for the penalty portions.

The legislative history further shows that Congress did not intend to treat taxes and tax penalties equally. The House of Representatives explained that, for purposes of the priority rules under § 507, "any tax liability which . . . is collectible in the form of a 'penalty,' is to be treated in the same manner as a tax liability. . . . *However, a tax penalty which is punitive in nature is given subordinated treatment under Section 726(a)(4)*." H.R. Rep. 95-595, at 549 (emphasis added). Section 724(a) is one way a Trustee may "maximize the assets of the bankruptcy estate to allow maximum recovery for the debtor's creditors," consistent with the Trustee's duty. *Hannon*, 619 B.R. at 529. But nothing in the text or history prioritizes payments to the Estate for penalties at the same level as taxes just because the Estate holds the penalty portion of the lien.

As we have recognized, §§ 724(a) and 551 effectively place the Trustee "into the shoes of the lienholder," *In re Tillman*, 53 F.4th 1160, 1164 (9th Cir. 2022), such that the Trustee "succeeds to the priority that interest enjoyed over competing interests," *Van de Kamp's*, 908 F.2d at 519. These provisions, in effect, allow the Trustee to "set aside the [penalty portion] of secured IRS tax liens and pay those amounts toward unsecured claims." *Hannon*, 619 B.R. at 533. But the argument that both debts are "entitled to equal payment" because the Trustee "steps into the shoes" of the IRS goes a step too far. Rather, under §§ 724(a) and 551, the Estate maintains the tax lien's priority *lien position* relative to junior liens and would be paid ahead of any such lienholders if funds are available. But no provision requires or guarantees that the Estate ultimately receive payment for the avoided penalty portion of a tax lien when the property is over-encumbered. To the contrary, Congress understood that § 551 will not benefit the Estate in every case, and it

chose to provide § 554 abandonment as the solution. *See* H.R. Rep. 95-595, at 376; S. Rep. 95-989, at 91.[4]

In short, the pro rata method is inconsistent with existing case law and the present Code's text and history.

## VI.     Conclusion

For the foregoing reasons, we reverse the judgment of the district court with respect to the proper allocation method and remand with instructions to further remand to the bankruptcy court to determine the final allocation amount, consistent with this opinion.

**REVERSED AND REMANDED.**

---

[4] We express no opinion as to whether any particular property may or should be abandoned in any given case. Whether abandonment is appropriate depends on the circumstances of each case.